# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| THE IPATT GROUP, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.: 2:09-cv-02419-GMN-RJJ |
| | ) | |
| THE SCOTTS MIRACLE-GRO | ) | **ORDER** |
| COMPANY, | ) | **(ECF No. 9)** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

   This case arises out of the alleged infringement of a patent for a rapid lawn repair product.  Pending before the Court is Defendant's Motion for Change of Venue (ECF No. 9.) For the reasons that follow, Defendant's motion is DENIED.

## I.       FACTS AND PROCEDURAL HISTORY

   Plaintiff The Ipatt Group, Inc. ("Ipatt") is a Florida corporation that does business in Las Vegas, Nevada under the name "Wonder Soil." (Compl. ¶ 1.)  Wonder Soil sells a rapid lawn repair product called Reground throughout the United States. (*Id.*)  Plaintiff Patti Donner Rubin, a Florida citizen, is the sole owner and a co-inventor of U.S. Patent No. 7,587,865 ("the Patent"), which concerns the compressed growing medium ("the Technology") used in Reground. (*Id.* ¶ 2.)  The Patent issued on September 15, 2009 based on an August 25, 2006 application, and Plaintiffs claim priority to a November 19, 2004 application. (*Id.* ¶ 7.)

   Defendant The Scotts Miracle-Gro Company ("Scotts") is an Ohio corporation that produces and sells grass seed products throughout the United States. (*Id.* ¶ 3.)  On October 29, 2008, Scotts filed a patent application relating to the Technology that the United States Patent and Trademark Office ("USPTO") rejected on September 29, 2009 as anticipated by Rubin's earlier Patent under 35 U.S.C. § 102. (*Id.* ¶¶ 8–9.)

In 2009, Plaintiffs learned that Scotts had been promoting and selling a product called Turf Builder EZ Seed ("the Infringing Product") that infringes one or more of the claims of the Patent, and Plaintiffs believe Scotts intends to begin selling the Infringing Product throughout the United States in 2010. (*Id.* ¶¶ 10–11.)  Rubin contacted Scotts concerning the infringement, and Scotts expressed a desire to purchase the Patent, but negotiations never led to a sale or license of the Patent. (*See id.* ¶¶ 12–13, 20.)

Nevertheless, at a December 17, 2009 "product walk" exhibition at a Home Depot store in Georgia, Scotts' Business Development Director, Jeff Kwiatkowski, promoted the Infringing Product and falsely represented that the Infringing Product was patented by Scotts and that Scotts held the exclusive rights to the Technology. (*Id.* ¶¶ 16–17.)  Plaintiffs believe that Scotts continues to make false representations regarding the Infringing Product to major retailers throughout the United States, which has harmed and continues to irreparably harm Plaintiffs' ability to profit from the patented Reground product and the Patent. (*Id.* ¶¶ 19, 21.)

Plaintiffs sued Defendant in this Court on three causes of action: (1) Tortious Interference and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a); (2) Tortious Interference (state law); and (3) Patent Infringement Under 35 U.S.C. § 271.  Defendant has moved for a change of venue to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).

## II.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "[S]ection 1404(a) transfer is available 'upon a lesser showing of inconvenience' than that required for a [f]orum non conveniens dismissal," *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)), but a district court has "broad discretion" under section 1404(a) and is to use a case-by-case analysis of convenience and fairness when ruling on transfer of venue.

1    *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29 (1988).

2    **III.    ANALYSIS**

3              Defendant correctly notes that the case could have been brought in the Southern District

4    of Ohio because federal jurisdiction is not based solely on diversity, (*see* Compl. ¶ 4), and the

5    lone Defendant resides in the Southern District of Ohio, *see* 28 U.S.C. §1391(b).  Defendant

6    argues that under *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the Southern District of Ohio is

7    more convenient for the parties and witnesses than is the District of Nevada.

8              As a preliminary matter, it should be noted that *Gilbert* concerned application of the

9    common law doctrine of *forum non conveniens*, not section 1404(a).  *See generally id.*  The

10   *Gilbert* Court noted that the *forum non conveniens* doctrine permits a court to deny jurisdiction

11   even where venue is statutorily proper in order to avoid accommodating a plaintiff who seeks not

12   only "some place in which to pursue his remedy," but also "justice blended with some

13   harassment." *Id.* at 507.  At that point in history, many states had enacted statutes giving their

14   courts the power to change venue for convenience of witnesses and the ends of justice, *see id.*,

15   but Congress did not enact the federal analogue until the following year, *see* Act of June 25,

16   1948, Pub. L. 80-773, 1948 U.S.C.C.A.N. (62 Stat. 937) 695, A92–A93.

17             In *Gilbert*, the district court dismissed a complaint under New York's *forum non*

18   *conveniens* doctrine when a Virginia plaintiff had sued a Pennsylvania defendant in diversity in

19   the Southern District of New York for the defendant's alleged negligence in Virginia. *See* 330

20   U.S. at 502–03.  The Second Circuit reversed, holding that the federal common law of *forum non*

21   *conveniens* applied, not that of New York, and that the district court had abused its discretion

22   under the federal doctrine. *See id.* at 503.  The Supreme Court reversed the Second Circuit,

23   holding that the standards under the federal and New York doctrines of *forum non conveniens*

24   were the same, *see id.* at 509, and that the district court had not abused its discretion in

25   dismissing under its inherent power to do so under the doctrine, *see id.* at 512.  The *Gilbert* Court

listed a plethora of factors to consider: the private interest of the litigants, relative ease of access to evidence, availability and costs of compulsory process, all other practical problems, enforceability of a judgment, advantages and obstacles to a fair trial, docket congestion, proximity to the majority of the affected and interested population, and conflict of laws. *See id.* at 508–09.  The Court stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 508.

Before § 1404(a) was enacted in 1948, a defendant in federal court aggrieved by inconvenience--as the Gulf Oil Corporation was in *Gilbert*--could only attempt to dismiss under the *forum non conveniens* doctrine.  There was no method of transfer.  Today, such a defendant may seek a transfer of venue to another federal district under § 1404(a) (for proper but inconvenient venue), or it may seek transfer or dismissal under §1406(a) (for improper venue), but it may generally only invoke the *forum non conveniens* doctrine if it seeks dismissal in favor of litigation in the courts of a foreign sovereign:

> *Gilbert* held that it was permissible to dismiss an action brought in a District Court in New York by a Virginia plaintiff against a defendant doing business in Virginia for a fire that occurred in Virginia.  Such a dismissal would be improper today because of the federal venue transfer statute, 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." By this statute, "[d]istrict courts were given more discretion to transfer  . . . than they had to dismiss on grounds of *forum non conveniens.*" *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981).  As a consequence, the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).

The Ninth Circuit has listed ten non-exhaustive factors to consider when ruling on a motion to transfer venue under § 1404(a):  (1) the location of negotiation and execution of agreements; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of

action in the chosen forum; (6) the differences in the costs of litigation; (7) the availability of compulsory process; (8) access to evidence; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

Here, factors (1), (2), (9), and (10) do not favor either party because: although Plaintiffs allege unfruitful negotiations to sell the Patent, they do not allege a location of those negotiations; the claims are all predicated on either federal law or the state law tort of tortious interference, which is alleged to have occurred nationwide, though particularly in Georgia, and neither Nevada nor Ohio courts will be more familiar with federal or Georgia law; there is no written agreement in dispute, and hence no forum selection clause; and no party asserts any state public policy contrary to the federal claims, *see* U.S. Const., art. VI, cl. 2, nor does Nevada appear to have a public policy against tortious interference claims.

Factors (3)–(5) support venue in Nevada.  First of all, plaintiffs have chosen Nevada as the forum, and, as Plaintiffs note, a defendant must make a "strong showing of inconvenience to warrant upsetting the plaintiff's choice," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Second, the parties both have contacts with the current forum. Though Ipatt's principal place of business is in Florida, it does business as Wonder Soil in Las Vegas, Nevada. (Compl. ¶ 1.)  In fact, all parties, including Defendant, do significant business in Nevada.  Rubin has even maintained a residence in Nevada for the past five years in order to test the Technology in the dry climate of Nevada, and opened Wonder Soil in Las Vegas to sell it. Not only do the parties have contacts with Nevada, these contacts are related to Plaintiffs' causes of action: both companies sell their respective products nationwide, including Nevada, and Defendant has sold, or, at a minimum, intends to sell, the Infringing Product in Nevada.

On the other hand, factor (6) appears to support transfer of venue to Ohio.  Defendant contends that the costs of litigation will be higher in Nevada than in Ohio, as nearly all of

Defendant's anticipated witnesses reside in Ohio within approximately thirty miles of the Columbus courthouse, and its two witnesses who live elsewhere live in North Carolina and Georgia, which are both closer to Ohio than to Nevada.  However, it does not appear as though the costs to Plaintiff would be lower by litigating the case in Ohio, as Plaintiffs' primary witness is expected to be Rubin, who allegedly maintains a residence in Nevada.

The availability of compulsory process and access to evidence--factors (7) and (8)--does not favor transfer to Ohio.  Although a federal court may not compel non-party witnesses to attend a trial if they reside outside of the state where the district court sits and will be required to travel more than 100 miles and incur substantial expense, and although the court also may not compel the deposition of a non-party witness if it would require more than 100 miles of travel, s*ee* Fed. R. Civ. P. 45 (c)(3)(A)(ii) and(B)(iii), that should not be an issue here, as most, if not all, of the witnesses will be parties or their corporate officers.

Taken together, these factors favor keeping the case in the District of Nevada.  Although it may be more expensive for Defendant to fly its witnesses to Las Vegas than for them to drive to Columbus, many of the other factors point toward maintaining this lawsuit in its current forum, the District of Nevada.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Change of Venue (ECF No. 9) is DENIED.  Consequently, Defendant's Motion for Hearing (ECF No. 27) is DENIED as moot.

DATED this 9th day of September, 2010.

_____
Gloria M. Navarro
United States District Judge