Patrick J. Reilly, Esq.
Nevada Bar No. 6103
HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Telephone: (702) 669-4600
Facsimile:  (702) 669-4650
preilly@hollandhart.com

John R. Posthumus, Esq. (*pro hac vice*)
Sheridan Ross PC
1560 Broadway, Suite 1200
Denver, CO 80202-5141
Tel:  (303) 863-9700
Fax:  (303) 863-0223
jposthumus@sheridanross.com

*Attorneys for Plaintiff/Counterdefendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PATTI DONNER RUBIN, a Florida resident,<br><br>            Plaintiff,<br><br>vs.<br><br>THE SCOTTS COMPANY, LLC, an Ohio limited liability corporation,<br><br>            Defendant.<br>_____/<br>THE SCOTTS COMPANY, LLC,<br><br>            Counterclaimant,<br><br>vs.<br><br>PATTI DONNER RUBIN,<br><br>            Counterdefendant. | Case No. 2:09-cv-02419-GMN-NJK<br><br>**PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT AND FOR SANCTIONS**<br><br>*Oral Argument Requested* |

Plaintiff Patti Donner Rubin ("Ms. Rubin") hereby moves for an order disqualifying Michael Stimson and the law firm of Jones Day from further representation in this case, and for sanctions as deemed appropriate by this Court, based upon improper *ex parte* communication with Ms. Rubin's expert witness in the above-entitled action.  This Motion is made pursuant to LR 7-2

6121445_1

1   and is based on the attached Memorandum of Points and Authorities and supporting

2   documentation, the papers and pleadings on file in this action, and any oral argument this Court

3   may allow.

4          DATED March 29, 2013.

5                                    HOLLAND & HART LLP

6

7                              By____/s/ Patrick J. Reilly_____
                                   Patrick J. Reilly, Esq.
8                                  9555 Hillwood Drive, Second Floor
                                   Las Vegas, Nevada 89134
9
                                   John R. Posthumus, Esq. (*pro hac vice*)
10                                 Sheridan Ross PC
                                   1560 Broadway, Suite 1200
11                                 Denver, CO 80202-5141

12                                 *Attorneys for Plaintiff/Counterdefendant.*

13

14            **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
               PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT
15                               AND FOR SANCTIONS**

16   **I.     INTRODUCTION**

17          During the deposition of Plaintiff's expert witness, Suseel Thomas, Plaintiff was shocked to

18   learn Defendant's counsel, Michael Stimson, had contacted Mr. Thomas without authorization and

19   without identifying himself as counsel for Defendant.   Stimson's unauthorized *ex parte* contact

20   violated the Federal Rules of Civil Procedure and the Nevada Rules of Professional Conduct.   As

21   such, Plaintiff seeks disqualification of and sanctions against Defendant's counsel.

22   **II.    RELEVANT FACTS**

23          On May 30, 2012, Plaintiff served Mr. Thomas' Expert Report upon Defendant's counsel,

24   including Stimson.   Declaration of John R. Posthumus ("Posthumus Decl."), Ex. 3, p. 2.   On

25   July 16, 2012, Defendant's counsel noticed the deposition of Mr. Thomas to take place on July 19,

26   2012, in Las Vegas, Nevada. *Id.*, Ex. 2.

27          Following receipt of Mr. Thomas' Expert Report, but before Mr. Thomas' deposition,

28   Stimson contacted Mr. Thomas through Mr. Thomas' company's website.   Posthumus Decl., Ex. 1,

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

6121445_1

35:17-18, 35:21-36:1. Stimson identified himself only as "Mike" with a contact email address of michael.stimson@gmail.com. *Id.*, Ex. 1, 35:17-36:11; Ex. 4. Defendant's counsel did ***not*** use his Jones Day email address (mstimson@jonesday.com) nor did he indicate to Mr. Thomas that he represented Defendant. *See id.*, Ex. 1, 36:4-11, 37:10-17; Ex 4.

Mr. Thomas responded to the email inquiry, unaware that Mr. Stimson was counsel for in this case. Posthumus Decl., Ex. 1, 36:4-11; Ex. 4. In response to Stimson's request for information, on June 7, 2012, Mr. Thomas replied to Stimson's gmail email address, providing Stimson with the requested information and asking Stimson for his company name and how he had heard of Madappatt Exports (Mr. Thomas' company). *Id.*, Ex. 1, 14:14-19, 36:4-11; Ex. 4. Stimson replied to Mr. Thomas on June 7, 2012, thanking Mr. Thomas for the information and requesting additional information. *Id.*, Ex. 4. Despite Mr. Thomas' request, Stimson did ***not*** state his company information or indicate how he had heard of Mr. Thomas' company. *Id.*, Ex. 1, 36:13-21; Ex. 4. That same day, Mr. Thomas replied to Stimson informing him of the requested information and further stating, "Once again I would like to have your company information." *Id.*, Ex. 1, 36:18-37:6; Ex. 4. Stimson never responded to Mr. Thomas' request for Stimson's company information. *Id.*, Ex. 1, 37:7-9.

Mr. Thomas did not learn of Stimson's company information until Mr. Thomas' deposition on July 19, 2012. Posthumus Decl., Ex. 1, 14:20-22, 37:7-9. At the deposition, Stimson pulled out a document and asked the reporter to mark it as Thomas Exhibit 3. *Id.*, Ex. 1, 14:9-10; Ex. 4. Stimson then described Exhibit 3 to Mr. Thomas as "e-mail correspondence, and I believe it's between -- Well, I know it's between me and somebody, and I believe it's between me and you." *Id.*, Ex. 1, 14:14-16; Ex. 4. Stimson apologized for not answering Mr. Thomas' questions regarding Stimson's company and told Mr. Thomas, "But now you know." *Id.*, Ex. 1, 14:20-21; Ex. 4. Stimson then proceeded to ask Mr. Thomas about the information Mr. Thomas provided in his emails. *Id.*, Ex. 1, 15:1-19:9; Ex. 4. Specifically, Stimson ran through prepared calculations with Mr. Thomas based on the dimensions Mr. Thomas provided in his emails. *Id.*, Ex. 1, 15:1-19:9; Ex. 4.

///

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

6121445_1

1   At the time of the email exchange, Mr. Thomas did not realize that Stimson was an

2   attorney for the Jones Day law firm. Posthumus Decl., Ex. 1, 37:10-17. Mr. Thomas thought

3   Stimson was merely making a business inquiry. *Id.*, Ex. 1, 37:14-17, 38:3-5. Stimson reiterated

4   this fact by stating to Mr. Thomas, "[Y]ou thought that I was making a business inquiry in my e-

5   mail? . . . But in fact, I was seeking information for use in this case, right?" *Id.*, Ex. 1, 38:3-7.

6   Further, Stimson asked Mr. Thomas, "But if in fact you realized that I had been making inquiries

7   relating to this case, you said you would not have answered my inquiries; is that right?" *Id.*, Ex. 1,

8   39:1-4. Mr. Thomas replied, "I didn't say that I would not have answered. But I said I didn't know

9   that you were asking questions based on this." *Id.*, Ex. 1, 39:5-7.

## III.   <u>LEGAL ARGUMENT</u>

11   A federal court has the inherent power to sanction litigants and attorneys for bad-faith

12   conduct. *See* <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991). "The district court has the duty

13   and responsibility of supervising the conduct of attorneys who appear before it." <u>Erickson v.</u>

14   <u>Newmar Corp.</u>, 87 F.3d 298, 300 (9th Cir. 1996) (citing <u>Frazier v. Heebe</u>, 482 U.S. 641, 645

15   (1987)).

### A.   **Stimson's Contact with Plaintiff's Expert Witness Violated Federal Rule of Civil Procedure 26.**

18   The American Bar Association's Model Rules and Ethics Opinions set forth the guidelines

19   on ethical conduct involving communication with an adversary's witness. *See* <u>Erickson</u>, 87 F.3d at

20   301-02. One ABA opinion cited in <u>Erickson</u> focused on Federal Rule of Civil Procedure 26,

21   which defines the procedure by which an attorney must deal with an opposing party's expert during

22   discovery. <u>ABA Comm. on Ethics & Prof'l Responsibility</u>, Formal Op. 378 (1993). Furthermore,

23   the ABA opinion states that an attorney who engages in *ex parte* communications with the

24   opposing party's witness commits a "flagrant violation." *Id.* (quoting <u>Campbell Indus. v. M/V</u>

25   <u>Gemini</u>, 619 F.2d 24 (9th Cir. 1980)).

26   Unauthorized *ex parte* contact with the opposing party's expert witness violates Rule 26.

27   "[T]he careful scheduling of experts' disclosures and discovery by the district court would be for

28   naught if the parties could back door these provisions with informal contacts of an adversary's

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

6121445_1

experts." *Carlson v. Monaco Coach Corp.*, No. CIV-S-05-0181-LKK/GGH, 2006 U.S. Dist. LEXIS 21464, at *10 (E.D. Cal. Apr. 20, 2006). Because Stimson informally, and without authorization, contacted Plaintiff's expert witness, Suseel Thomas, after receiving Mr. Thomas' expert report but before Defendant's counsel noticed the deposition of Mr. Thomas, Stimson has blatantly ignored this Court's careful scheduling of experts' disclosures.

**B.      Stimson's Unauthorized Contact with Mr. Thomas was Unethical.**

**1.      Stimson Violated Nevada Rules of Professional Conduct 3.4 & 8.4.**

In the U.S. District Court for the District of Nevada, attorneys must abide by the Model Rules of Professional Conduct as adopted by the Supreme Court of Nevada. LR IA 10-7.

Stimson's *ex parte* contact with Plaintiff's expert witness violated Nevada Rule of Professional Conduct 3.4, the duty to obey obligations of the tribunal, and Rule 8.4, the prohibition against conduct which is prejudicial to the administration of justice. "In federal court, the discovery rules impose obligations on attorneys during the course of litigation." *Erickson*, 87 F.3d at 301. Rule 26(b) provides that a lawyer's permissible contact with an opposing party's expert is limited to depositions. Fed. R. Civ. P. 26(b)(4)(A); *see also Erickson*, 87 F.3d at 301. Thus, all forms of contact other than those expressly listed in the Rules are impliedly prohibited. *Erickson*, 87 F.3d at 301 (citing Geoffrey C. Hazard & William Hodes, *The Law of Lawyering* § 3.4:402 (2d ed. Supp. 1994)).

Although there is no model rule specifically addressing *ex parte* contact with the opposing party's expert witness, "[e]x parte communications circumvent the discovery rules and thus violate an attorney's duty to obey the obligations of the tribunal." *Erickson*, 87 F.3d at 302 (citing ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 378 (1993) and Nev. R. Prof'l Conduct 3.4).[1]

---

[1] In *Erickson*, the Ninth Circuit reversed and remanded a judgment for the defendant, ordering "at a minimum" a new trial where the defendant engaged in *ex parte* communications with plaintiff's expert witness. Although the *ex parte* communication involved another unrelated lawsuit, the Court noted that said contact was "particularly disturbing" and concluded that it violated both the ABA Model Rules and Nevada's Rules of Professional Responsibility. 87 F.3d at 303. In a strong rebuke, the Ninth Circuit noted that the district court "abdicated its duty to examine the charge of unethical behavior and impose the necessary sanctions." *Id.* As a result, in addition to ordering a new trial, the Ninth ...(cont'd)

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

6121445_1

This Court follows the discovery procedures set forth in the Federal Rules of Civil Procedure, as modified by the Local Rules, and sets dates for expert witness discovery, including depositions. *See generally* LR IA 2-1. Stimson's *ex parte* communications with Mr. Thomas were not authorized by either the Federal Rules of Civil Procedure or the Local Rules. Rather, Stimson's conduct circumvented this Court's discovery rules. Therefore, these *ex parte* communications violated Stimson's duty to obey the obligations of the tribunal.

The procedure for the discovery of experts is well established. *Erickson*, 87 F.3d at 302. An attorney who does not follow this established procedure may violate the ethical rule prohibiting conduct prejudicial to the administration of justice. *Id.* (citing Nev. R. Prof'l Conduct 8.4). "[A]ttorneys must use their common sense to avoid conduct which could appear to be an improper attempt to influence a witness who is about to testify." *Id.* at 303. It is common sense that an attorney may not contact opposing counsel's expert witness, before that witness' deposition, without the permission of opposing counsel. *See id.* at 302. Stimson's *ex parte* contact with Plaintiff's expert witness was prejudicial to the administration of justice because he discovered information from Plaintiff's expert and used that information in the expert's deposition. Defendant's counsel could and should have discovered this information through the authorized discovery channels, i.e., subpoena, through the deposition of the expert, or with Plaintiff's permission.

**2. Stimson Violated Nevada Rule of Professional Conduct 4.3.**

Stimson's *ex parte* contact with Plaintiff's expert witness violated Nevada Rule of Professional Conduct 4.3 because Stimson did not indicate that he represented Defendant. Plaintiff's expert witness is not represented by an attorney. *See* Steven Lubet, *Expert Witnesses: Ethics and Professionalism*, 12 GEO. J. LEGAL ETHICS 465, 485 (1999) ("Retaining counsel is not the [expert] witness's lawyer . . . . Since the expert is not a party to the case, the expert is not

(cont'd)
Circuit directed the district court "to impose appropriate sanctions and disciplinary action upon defense counsel." *Id.* at 304.

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

6121445_1

represented by either of the attorneys."). Rule 4.3 applies to an attorney's contact with unrepresented persons, e.g., the opposing party's expert witnesses:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Nev. R. Prof'l Conduct 4.3.

Stimson's contact with Plaintiff's expert witness implied that Stimson was disinterested, which violates Nevada Rule of Professional Conduct 4.3. Stimson requested information from Plaintiff's expert's website and listed his contact information as "Mike" and michael.stimson@gmail.com, which is presumably Stimson's personal email address. Posthumus Decl., Ex. 1, 35:17-18, 35:21-36:1; Ex. 4. Stimson did not use his law firm email address (mstimson@jonesday.com), nor did he tell Plaintiff's expert that he was Defendant's counsel. *See id.*, Exs. 1, 4. Therefore, Stimson's contact implied that he was disinterested.

If an attorney knows that an unrepresented person misunderstands the attorney's role in the matter, then the attorney must take steps to correct the misunderstanding in order to avoid violating Nevada Rule of Professional Conduct 4.3. *See Galliher v. Bekakos*, No. 2:09-cv-02047-RCJ-LRL, 2010 U.S. Dist. LEXIS 91469, at *6 (D. Nev. July 26, 2010). Stimson knew that Plaintiff's expert witness misunderstood his role in the matter because Plaintiff's expert asked Stimson twice the name of the company for which Stimson worked. Posthumus Decl., Ex. 4. Plaintiff's expert would not have asked for Stimson's company name if he knew that Stimson represented Defendant. *Id.*, Ex. 1, 37:14-19. Further, Stimson admitted that he knew Mr. Thomas thought Stimson was making a business inquiry. *Id.*, Ex. 1, 38:3-7 ("[Y]ou thought that I was making a business inquiry in my e-mail . . . . But in fact, I was seeking information for use in this case, right?" *Id.*). This admission is extremely telling—it reveals that Stimson deliberately misled Plaintiff's expert witness when he made *ex parte* contact with him. Given this misleading conduct, Defendant's counsel obviously did not take any steps to correct this misunderstanding until Stimson told Plaintiff's expert at the expert's deposition that Stimson was the "Mike" in the

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

6121445_1

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

1   aforementioned emails. *Id.*, Ex. 1, 14:14-16.  By then, Stimson was using information he had

2   received from his unethical *ex parte* communications to bolster his examination of Ms. Rubin's

3   retained expert witness. *Id.*, Ex. 1, 15:1-19:9, 20:21-21:11.  Not only did Stimson fail to respond

4   to Mr. Thomas' questions regarding Stimson's company and how Stimson heard of Mr. Thomas'

5   company, Stimson sent Mr. Thomas a follow-up email asking for more information while blatantly

6   ignoring Mr. Thomas' questions about Stimson's identity. *Id.*, Ex. 4.  Accordingly, Stimson did not

7   make a reasonable effort to correct Mr. Thomas' misunderstanding.

8   **C.    Defendant's Counsel Should be Disqualified.**

9       "Rule 37 authorizes 'a wide range of sanctions' for a party's failure to comply with

10  discovery rules or court orders enforcing them." *Carlson*, 2006 U.S. Dist. LEXIS 21464, at *4

11  (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).  "District judges

12  have an arsenal of sanctions they can impose for unethical behavior.  These sanctions include

13  monetary sanctions, contempt, and the disqualification of counsel." *Erickson*, 87 F.3d at 303.

14  Additionally, Rule 37 allows the preclusion sanction when a party fails to obey a court discovery

15  order, i.e., violates Federal Rule of Civil Procedure 26 and Nevada Rule of Professional Conduct

16  3.4. *Gemini*, 619 F.2d at 27.

17      In addition to Rule 37 sanctions, courts have inherent powers that are "governed not by rule

18  or statute but by the control necessarily vested in courts to manage their own affairs so as to

19  achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43.  Before a

20  court may impose sanctions against a lawyer or a party under its inherent power, it must find that

21  the lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." 

22  *Chambers*, 501 U.S. at 45-46.  All that is required to demonstrate "willfulness" or "bad faith" is

23  "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Indus.,*

24  *Inc.*, 983 F.2d 943, 948 (9th Cir. 1993).

25      Here, there are disturbing facts contained in the email communication addressed to

26  Mr. Thomas, Plaintiff's expert witness, dated June 7, 2012, and in the deposition transcript. *See*

27  Posthumus Decl., Exs. 1, 4.  First, Defendant's counsel contacted Plaintiff's expert without a

28  subpoena or Plaintiff's permission.  *Id.* at ¶ 7.  Stimson's unauthorized *ex parte* contact is

6121445_1

disobedient conduct that is clearly within his own control. Second, Stimson did not tell Plaintiff's expert that he represented Defendant. *See id.*, Exs. 1, 4. Again, such an omission was within Stimson's control. Third, there can be no claim of "inadvertence." Defendant's counsel knew Mr. Thomas was Plaintiff's expert because Stimson had received Mr. Thomas' expert report a week before Stimson contacted Mr. Thomas. *Id.*, Ex. 3. In fact, it was only because Plaintiff had disclosed Mr. Thomas as an expert that Defendant's counsel contacted him. *Id.*, Ex. 1, 38:6-7; Ex. 3. Accordingly, Stimson acted willfully and in bad faith and this Court must impose sanctions under its inherent power, per the binding Ninth Circuit authority of *Erickson*.

It is the duty of the district court to examine an allegation that an attorney has violated his moral and ethical responsibility, and a court may disqualify an attorney "for not only acting improperly but also for failing to avoid the appearance of impropriety." *Gas-A-Tron of Airz. v. Union Oil Co.*, 534 F.2d 1322, 1324-25 (9th Cir. 1976). Stimson did not tell Plaintiff's expert that he represented Defendant when Stimson contacted Plaintiff's expert. Stimson's omission was an improper act because it violated the ethical rules. *See* Nev. R. Prof'l Conduct 4.3. Plaintiff's expert did not know that the "Mike" in the email inquiry was Defendant's counsel, Stimson, a partner at Jones Day. *See* Posthumus Decl., Ex. 1, 37:10-17; Ex. 4. This misrepresentation also fails to avoid the appearance of impropriety because Stimson knew Plaintiff's expert was unaware that Stimson was Defendant's counsel. Accordingly, this Court should disqualify Defendant's counsel for acting improperly and failing to avoid the appearance of impropriety.

In *Rebel Communications* this Court stated: "Disqualification motions present courts with a delicate and sometimes difficult balancing task. Close cases are resolved in favor of disqualification. Where disqualification is contemplated, any doubt is resolved in favor of disqualification." *Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-cv-00513-LRH-GWF, 2011 U.S. Dist. LEXIS 21489, at *13-14 (D. Nev. Feb. 15, 2011) (citations omitted). Additionally, "the court should consider whether the ethical violation can be remedied by some less onerous sanction than disqualification." *Hernandez v. Guglielmo*, 796 F. Supp. 2d 1285, 1290 (D. Nev. 2011). In light of Stimson's unauthorized contact with Plaintiff's expert witness and Stimson's omission of his connection with this action, coupled with Stimson's failure to correct Mr.

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

1   Thomas' false impression that "Mike" was not Defendant's counsel, lesser sanctions will not

2   remedy Stimson's ethical violation or his discovery violation.  Despite being asked by Mr. Thomas

3   to identify Stimson's company, Stimson intentionally omitted his connection to this action when he

4   replied to Mr. Thomas asking for more information.  Stimson's unethical conduct should not be

5   tolerated; therefore, Stimson should be disqualified to prevent his inexcusable behavior in the

6   future.

7   **IV.**   **CONCLUSION**

8       For the reasons listed above, Plaintiff's Motion to Disqualify Counsel for Defendant and for

9   Sanctions should be granted.

10       DATED March 29, 2013.

11                          HOLLAND & HART LLP

12

13                     By   /s/ Patrick J. Reilly

14                     Patrick J. Reilly, Esq.
                  9555 Hillwood Drive, Second Floor
                  Las Vegas, Nevada 89134

15

16                     John R. Posthumus, Esq. (*pro hac vice*)
                  Sheridan Ross PC

17                     1560 Broadway, Suite 1200
                  Denver, CO 80202-5141

18                     *Attorneys for Plaintiff/Counterdefendant.*

19

20

21

22

23

24

25

26

27

28

*HOLLAND & HART LLP*
*9555 Hillwood Drive, Second Floor*
*Las Vegas, Nevada 89134*
*Phone: (702) 669-4600; Fax: (702) 669-4650*

6121445_1

HOLLAND & HART LLP<br>
9555 Hillwood Drive, Second Floor<br>
Las Vegas, Nevada 89134<br>
Phone: (702) 669-4600; Fax: (702) 669-4650

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2013, a true and correct copy of the foregoing **PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT AND FOR SANCTIONS** was served on counsel as follows:

### Electronic Service through the Court's electronic service system:

Chad R. Fears, Esq.
Gregory A. Brower, Esq.
Snell & Wilmer
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169-5958
Tel: (702) 784-5200
Fax: (702) 784-5252
Email: cfears@swlaw.com

Jeffrey J. Jones, Esq. (pro hac vice)
Jones Day
325 John H. McConnell Boulevard
Suite 600
P.O. Box 165017
Columbus, Ohio 43216-5017
Tel: (614) 469-3939
Fax: (614) 461-4198
Email: drcole@jonesday.com

William C. Rooklidge, Esq. (pro hac vice)
Michael J. Stimson, Esq. (pro hac vice)
Michelle Stover, Esq. (pro hac vice)
Jones Day
3161 Michelson Drive, Suite 800
Irvine, California 92612
Tel: (949) 851-3939
Tel: (949) 553-7501
Fax: (949) 553-7539
Email: wrooklidge@jonesday.com
　　　　mstimson@jonesday.com
　　　　mstover@jonesday.com

　　　　　　　　/s/ Dineen M. Bergsing
　　　　　　　An Employee of Holland & Hart LLP

6121445_1

Patrick J. Reilly, Esq.
Nevada Bar No. 6103
HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Telephone: (702) 669-4600
Facsimile:  (702) 669-4650
preilly@hollandhart.com

John R. Posthumus, Esq. (*pro hac vice*)
Sheridan Ross PC
1560 Broadway, Suite 1200
Denver, CO 80202-5141
Tel:  (303) 863-9700
Fax:  (303) 863-0223
jposthumus@sheridanross.com

*Attorneys for Plaintiff/Counterdefendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PATTI DONNER RUBIN, a Florida resident, | Case No. 2:09-cv-02419-GMN-NJK |
| Plaintiff, | |
| vs. | **DECLARATION OF JOHN R. POSTHUMUS IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT PURSUANT TO FED. R. CIV. P. 37** |
| THE SCOTTS COMPANY, LLC, an Ohio limited liability corporation, | |
| Defendant. | |
| THE SCOTTS COMPANY, LLC, | |
| Counterclaimant, | |
| vs. | |
| PATTI DONNER RUBIN, | |
| Counterdefendant. | |

I, John R. Posthumus, hereby declare as follows:

1.      I am over the age of 18.  I have personal knowledge of the facts set forth below and, if called upon to do so, could and would competently testify thereto.

2.      I am an attorney with the law firm of Sheridan Ross P.C., located in Denver,

Page 1 of 2

6121475_1

1   Colorado.  Sheridan Ross is counsel for Plaintiff Patti Donner Rubin in the above-captioned

2   action.  I am familiar with the matters set forth in this Declaration.  I make this Declaration in

3   support of Plaintiff's Motion to Disqualify Counsel for Defendant Pursuant to Fed. R. Civ. P. 37.

4          3.       Attached hereto as Exhibit 1 is a true and correct copy of excerpts from the July 19,

5   2012 Suseel Thomas deposition transcript ("Thomas Dep.").

6          4.       Attached hereto as Exhibit 2 is a true and correct copy of Defendant's Amended

7   Notice of Deposition of Suseel Thomas (Thomas Dep., Ex. 1.).

8          5.       Attached hereto as Exhibit 3 is a true and correct copy of the Expert Report of Suseel

9   Thomas (Thomas Dep., Ex. 2.).

10          6.       Attached hereto as Exhibit 4 is a true and correct copy of the email communication

11   between Defendant's counsel, Michael Stimson, and Suseel Thomas (Thomas Dep., Ex. 3.).

12          7.       Defendant's counsel, Michael Stimson, did not ask me for Plaintiff's permission to

13   contact Mr. Thomas outside of Mr. Thomas' deposition.

14          DATED March 29, 2013.

15

16                                  By:    s/ John R. Posthumus

17                                  John R.  Posthumus

18

19

20

21

22

23

24

25

26

27

28

HOLLAND & HART LLP
9555 Hillwood Drive, Second Floor
Las Vegas, Nevada 89134
Phone: (702) 669-4600; Fax: (702) 669-4650

6121475_1

# EXHIBIT 1

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PATTI DONNER RUBIN, a Florida

resident,

             Plaintiff,

                              Case No.:

     vs.                      09-CV-02419(GMN)RJJ

THE SCOTTS COMPANY LLC, an Ohio

limited liability company,

             Defendant.

_____

DEPOSITION OF SUSEEL THOMAS

Taken on Thursday, July 19, 2012

9:26 a.m.

At Snell & Wilmer LLP

3883 Howard Hughes Parkway

Suite 1100

Las Vegas, Nevada

Reported by:  Michelle C. Johnson, RPR-CRR

_____

DIGITAL EVIDENCE GROUP

1726 M Street NW, Suite 1010

Washington, DC  20036

(202) 232-0646

a525ba80-5cdd-4f9a-9113-427d8a59de5e

7/19/2012          Patti Donner Rubin v. The Scotts Company, LLC          Suseel Thomas

| | |
|---|---|
| 1  APPEARANCES: | 1  PROCEEDINGS          9:26 A.M. |
| 2  For the Plaintiff: | 2      THE VIDEOGRAPHER:  Good morning, this is Tape |
| 3  JOHN R. POSTHUMUS | 3  No. 1 of the video deposition of Suseel Thomas, taken |
| 4  Attorney at Law | 4  by the attorneys for the defendant, in the matter of |
| 5  SHERIDAN ROSS PC | 5  Patti Donner Rubin, a Florida resident, Plaintiff, vs. |
| 6  1560 Broadway | 6  The Scotts Company LLC, an Ohio limited liability |
| 7  Suite 1200 | 7  company, Defendant, in the United States District |
| 8  Denver, Colorado 80202-5141 | 8  Court, District of Nevada, Case Number |
| 9  303/863-2963 | 9  09-CV-02419(GMN)RJJ. |
| 10  Fax: 303/863-0223 | 10      This deposition is being held at Snell & |
| 11  jposthumus@sheridanross.com | 11  Wilmer, 3883 Howard Hughes Parkway, Suite 1100, Las |
| 12 | 12  Vegas, Nevada, 89169, on Thursday, July 19th, 2012. |
| 13  For the Defendant: | 13  The time of the video screen is 9:27 a.m. |
| 14  MICHAEL J. STIMSON, Ph.D. | 14      My name is Joseph Camp.  I am a legal |
| 15  Attorney at Law | 15  videographer with Digital Evidence Group.  The court |
| 16  JONES DAY | 16  reporter is Michelle C. Johnson, in association with |
| 17  3161 Michelson Drive | 17  Digital Evidence Group. |
| 18  Suite 800 | 18      Will counsel please identify themselves for |
| Irvine, California 92612 | 19  the record. |
| 19  949/851-3939 | 20      DR. STIMSON:  My name is Michael Stimson, of |
| Fax: 949/553-7539 | 21  the law firm Jones Day, on behalf of Defendant, The |
| 20  mstimson@jonesday.com | 22  Scotts Company, LLC. |
| 21 | |
| Also Present:  JOSEPH W. CAMP, Videographer | |
| 22 | |
| Page 2 | Page 4 |

| | |
|---|---|
| 1      INDEX | 1      MR. POSTHUMUS:  My name is John Posthumus, |
| 2  WITNESS | 2  with the law firm of Sheridan Ross, representing the |
| 3  SUSEEL THOMAS | 3  Plaintiff, Patti Rubin. |
| 4            PAGE | 4      THE VIDEOGRAPHER:  Will the court reporter |
| 5  Examination by Dr. Stimson      5 | 5  please swear in the witness. |
| 6  Examination by Mr. Posthumus      30 | 6  Whereupon -- |
| 7  Further Examination by Dr. Stimson   38 | 7      SUSEEL THOMAS, |
| 8 | 8  being first duly sworn to tell the truth, the whole |
| 9 | 9  truth, and nothing but the truth, was examined and |
| 10 | 10  testified as follows: |
| 11      EXHIBITS | 11      EXAMINATION |
| 12  NUMBER            PAGE | 12  BY DR. STIMSON: |
| 13  Thomas | 13  Q.  Good morning, Mr. Thomas. |
| 14  Exhibit 1  Amended deposition notice      11 | 14  A.  Good morning. |
| 15  Exhibit 2  Expert Report of Suseel Thomas   12 | 15  Q.  Have you been deposed before? |
| 16  Exhibit 3  7/2/12 and 7/7/12 e-mail stream   14 | 16  A.  No. |
| 17 | 17  Q.  Let me just explain to you how I expect this |
| 18 | 18  to go.  I think today's deposition will be a short |
| 19 | 19  one. |
| 20 | 20      But what I'm going to do is ask you a series |
| 21 | 21  of questions. |
| 22 | 22  A.  Uh-huh. |
| Page 3 | Page 5 |

Pages 2 to 5

a525ba80-5cdd-4f9a-9113-427d8a59de5e
EXHIBIT 1, pg. 3

7/19/2012          Patti Donner Rubin v. The Scotts Company, LLC          Suseel Thomas

1     Q. Is it correct that what you feed into the
2  compaction machine is loose coir?
3     A. It is true, yeah. It is loose coir.
4     Q. Okay. And then you -- And then what happens
5  in the compaction machine to form a brick is you
6  reduce the volume of the loose coir by a factor of 8;
7  is that correct?
8     A. That's true.
9     DR. STIMSON: Okay. I'm going to ask the
10 reporter to mark Exhibit Thomas 3.
11    (Thomas Exhibit 3 was marked for
12    identification.)
13 BY DR. STIMSON:
14    Q. This is e-mail correspondence, and I believe
15 it's between -- Well, I know it's between me and
16 somebody, and I believe it's between me and you.
17    Can you verify that this is e-mail
18 correspondence between -- that you sent?
19    A. Yes, this has been sent by me.
20    Q. And I apologize for not answering your
21 question in your e-mail. But now you know.
22    A. I know, yeah.

Page 14

1  the height; is that correct?
2     A. Yeah, length of the brick and height.
3     Q. And so the volume of your brick is 1,000
4  cubic centimeters; is that correct?
5     A. Thousand cubic centimeters.
6     Q. Okay, 1,000 cubic centimeters.
7     And that means that the initial volume of the
8  loose coir before you compressed it would be about
9  8,000 cubic centimeters; is that correct?
10    A. That's true.
11    Q. 8,000 cubic centimeters.
12    And then I asked you what the masses of the
13 brick and block are, and you answered at the top, the
14 brick is 650 grams, correct?
15    A. That's the weight.
16    Q. Okay. And so that would also be the weight
17 of the loose coir that you put into the compaction
18 machine to make that brick; is that correct?
19    A. Not necessarily.
20    Q. Okay. Why not?
21    A. Because it is getting compressed. It is
22 compressed in a 1-to-8 ratio.

Page 16

1     Q. Okay. So in your -- Starting from the
2  bottom, you write, "Dear Mike, Our block dimension is
3  28 by 28 by 13 to 14 centimeters; brick is 20 by 10 by
4  5."
5     And that's centimeters, correct?
6     A. That's correct.
7     Q. So the brick volume, if my math is correct,
8  is 1,000 cubic centimeters. Is that correct?
9     A. The brick output you mean?
10    Q. The brick volume. 20 centimeters by 10
11 centimeters by 5 centimeters, is that 1,000 cubic
12 centimeters?
13    A. It is the dimension of the brick.
14    Q. Okay. And do you understand that the volume
15 of the brick would be taking the length of the brick
16 by the height of the brick by the width of the brick?
17 The volume.
18    A. Yeah.
19    Q. It's a cube -- It's a rectangle, correct?
20    A. It's a rectangle. It's a rectangle block.
21    Q. Okay. And so you can compute the volume of
22 the brick by multiplying the length by the width by

Page 15

1     Q. Okay.
2     A. So it can vary.
3     Q. Do you lose any coir when you compress it?
4     A. You lose.
5     Q. You lose some?
6     A. You lose some.
7     Q. So you might actually put more than 650 grams
8  of coir in, but your brick comes out at 650?
9     A. It is not exactly 650.
10    Q. Okay.
11    A. It's with a tolerance of 5 percent, I have
12 mentioned here.
13    Q. Okay.
14    A. We can gain 5 percent; we can lose 5
15 percent --
16    Q. Okay.
17    A. -- because it's a continuous process.
18    Q. Okay. But is it correct that the amount --
19 But it's correct that the amount of coir that's in
20 that brick is about 650 grams, correct?
21    A. Yeah, that's correct.
22    Q. Okay. And so the coir that gets compressed

Page 17

Pages 14 to 17

a525ba80-5cdd-4f9a-9113-427d8a59de5e
EXHIBIT 1, pg. 4

7/19/2012          Patti Donner Rubin v. The Scotts Company, LLC          Suseel Thomas

| | |
|---|---|
| 1  into the brick, the amount of coir that gets | 1  Q. Okay. |
| 2  compressed into the brick, not the stuff that doesn't | 2  (Reporter clarification.) |
| 3  end up in the brick, you said that you could have more | 3  BY DR. STIMSON: |
| 4  loose coir than 650, correct? | 4  Q. You said if you have more -- |
| 5  A. Yeah. | 5  A. Fine. |
| 6  Q. Okay. So ignoring the stuff that doesn't end | 6  Q. -- fines?  If you have more fine material -- |
| 7  up in the brick. | 7  A. Fine material, yes. |
| 8  A. No. | 8  Q. -- the weight goes up? |
| 9  Q. Okay. The amount of loose coir that does end | 9  A. Weight goes up. |
| 10  up in the brick is that same approximate 650 -- | 10  Q. And so the bulk density would also go up? |
| 11  A. About 650 grams. | 11  A. Go up. |
| 12  Q. -- grams? | 12  Q. Okay. And so at Madappatt Exports, you use |
| 13  Okay. And so if I wanted to know the bulk | 13  materials in your loose coir that have sufficient |
| 14  density of that loose coir, I would take the 650 grams | 14  amounts of fines to give a bulk density of 2.8 |
| 15  and divide by its initial volume, 8,000 cubic | 15  kilograms per -- |
| 16  centimeters, correct? | 16  A. Approximate. |
| 17  A. Yep. | 17  Q. -- cubic foot?  Okay. |
| 18  Q. Yes, okay. | 18  But if you had fewer fines, then that bulk |
| 19  And the answer I get when I do that is | 19  density would decrease, correct? |
| 20  0.08125 grams per cubic centimeter.  Do you have any | 20  A. Yes. |
| 21  reason to dispute that that is an approximate measure | 21  Q. Okay.  Can you see any error in the |
| 22  of the bulk density of loose coir that you use at | 22  calculation that I proposed, taking the 650 grams of a |
| Page 18 | Page 20 |

| | |
|---|---|
| 1  Madappatt Exports? | 1  brick and dividing it by 8,000 cubic centimeters of |
| 2  A. In a 650-gram brick? | 2  the initial uncompressed volume of the loose coir, in |
| 3  Q. Well, the loose coir.  I'm not talking about | 3  order to get the bulk density of the loose coir? |
| 4  the brick; I'm talking about the bulk density of the | 4  A. I'm not very good at mathematics. |
| 5  loose coir. | 5  Q. Okay. |
| 6  A. I mean, that is for a 650-gram brick? | 6  A. So . . . |
| 7  Q. Well, we made that calculation based on the | 7  Q. And then -- So you don't -- So you, sitting |
| 8  650-gram brick. | 8  here today, can't see any flaw in that calculation; is |
| 9  A. That's not true. | 9  that correct? |
| 10  Q. What's not true? | 10  A. Yeah.  But if I need to -- I can calculate by |
| 11  A. See, 1 -- Bulk density of 1 cubic foot of | 11  myself if I have a calculator or something. |
| 12  loose coir when measured is approximately 2.8 | 12  Q. Okay.  If you -- If you have to calculate, |
| 13  kilograms. | 13  what would you calculate? |
| 14  Q. Okay, 2.8 kilograms for what? | 14  A. I can calculate and let you know how much of |
| 15  A. For 1 cubic foot. | 15  bulk density a 650 gram loose coir will have. |
| 16  Q. So the loose coir that you use at Madappatt | 16  Q. Okay.  And how would you make that |
| 17  Exports has a bulk density of 2.8 kilograms per cubic | 17  calculation? |
| 18  foot? | 18  A. A cubic foot -- A cubic foot is 2.8 |
| 19  A. Per cubic foot.  Again, it can vary based on | 19  kilograms.  So basically, a 5kg block would make 2 |
| 20  the material type.  Because if you have more fines, | 20  point -- when hydrated with water -- will have 2.5 |
| 21  the rate will go up.  If you have -- I am talking | 21  liter -- cubic foot.  So that means we can calculate |
| 22  about good-quality material we use. | 22  proportionately for 650 grams. |
| Page 19 | Page 21 |

a525ba80-5cdd-4f9a-9113-427d8a59de5e
EXHIBIT 1, pg. 5

1  your expert report -- a 5:1 -- a block at 5:1, a brick
2  an 8:1 ratio, correct?
3      A. Yeah.
4      Q. Is there a reason why you compress it before
5  it leaves your facility?
6      A. See, why we compress it is because we are
7  shipping it out. So the customer is going -- paying
8  for the shipping, so we need to ensure that the
9  customer get the maximum benefit when they are paying
10 for the shipping. They get the maximum benefit if you
11 compact.
12     If it is loose coir -- For example, I'll tell
13 you, if you are loading on a 40-foot-high cube
14 container, if you load lose coir, the customer can get
15 only approximately about 10 metric tons of material;
16 whereas, if you compress it, they can get up to 24
17 metric tons, if palletized. If nonpalletized, they
18 can get even 26 metric tons.
19     Q. Okay.
20     A. So that makes a difference in shipping.
21     Q. Okay. I'm going to ask you to look at
22 Exhibit No. 3. The lower e-mail here says -- and I'll

Page 34

1  read this -- it says, "Dear Mike, Our block dimension
2  is 28 by 28 by 13 hyphen 14 centimeters," period.
3  "And the brick is 20 times 10 times 5. Please let me
4  know your company name and where did you hear about
5  us. Thanks, Thomas."
6      The "Thomas" here is you?
7      A. That's me.
8      Q. Okay. And it looks like you sent this
9  e-mail, if I'm looking at the line above what I just
10 read, it indicates June 7th, 2012 at 3:28 a.m.
11     A. That's correct.
12     Q. Okay. And that would have been local time?
13     A. Local day.
14     Q. Okay. Now, was there an earlier
15 communication that was received by you that prompted
16 you to send this e-mail to Mike?
17     A. Yeah. I think Mike had sent me a mail from
18 my website.
19     Q. Okay. And then the Mike --
20     A. This is in reply to that mail.
21     Q. Okay. So you believe, then, that there would
22 have been -- On your website, there is an opportunity

Page 35

1  for somebody to present a question to you?
2      A. I thought this is -- this is a business
3  inquiry for me.
4      Q. Okay. Okay. So -- And the Mike that
5  you're -- that's referred here, so the record is
6  clear, is Mike Stimson, who is the lawyer for Scotts,
7  correct?
8      A. I didn't know that.
9      Q. Okay. You didn't know it at the time, but
10 now --
11     A. Yeah, now I know.
12     Q. Now you know that, okay.
13     And so -- And then there is a communication
14 on June 7th at 5:52 p.m., it appears here, from Mike
15 Stimson, where he wrote, "Thank you for this
16 information. Can you tell me the masses or weights
17 also?"
18     And then you wrote what appears to be a reply
19 to that e-mail on Thursday, June 7th, 2012 at 6:16
20 a.m.; is that correct?
21     A. That's correct.
22     Q. Okay. And that is something that you wrote

Page 36

1  to him?
2      A. Yeah.
3      Q. Okay. And then you said, "Once again, I
4  would like to have your company information."
5      Did you write that?
6      A. I did write that.
7      Q. Okay. And did you ever receive a response
8  from Mr. Stimson?
9      A. I didn't receive anything from that.
10     Q. Okay. And just so the record is clear, when
11 you were communicating here with Mr. Stimson, you did
12 not realize at that point in time that he was an
13 attorney for the Jones Day law firm; is that correct?
14     A. Never. I never realize that he is -- I
15 thought it was a business opportunity for me, that's
16 why I kept on asking, can you provide me with the
17 company information.
18     Q. Okay.
19     A. If I'd have known, I wouldn't ask.
20     MR. POSTHUMUS: Okay. Okay, no further
21 questions.
22     DR. STIMSON: Couple follow-up questions.

Page 37

Pages 34 to 37

a525ba80-5cdd-4f9a-9113-427d8a59de5e
EXHIBIT 1, pg. 6

1    FURTHER EXAMINATION
2  BY DR. STIMSON:
3      Q. Exhibit Thomas 3, you thought that I was
4  making a business inquiry in my e-mail?
5      A. Yes.
6      Q. But in fact, I was seeking information for
7  use in this case, right?  Is that your understanding?
8      A. I didn't know that.
9      Q. Is that -- Is that your understanding?
10  Currently, is that your current, current,
11  understanding?
12      A. Now I know that you are seeking information
13  for this case.
14      Q. Okay.  And -- But your answers to my e-mail,
15  even though you thought that I was having a -- making
16  a business inquiry -- your answers to my e-mail were
17  truthful, weren't they?
18      A. Yeah, they were truthful, yeah.
19      Q. Okay.  So you weren't -- So none of the
20  information you provided to me was not truthful,
21  correct?
22      A. It's hundred percent truth.

Page 38

1      Q. Okay.  But if in fact you realized that I had
2  been making inquiries relating to this case, you said
3  you would not have answered my inquiries; is that
4  right?
5      A. I didn't say that I would not have answered.
6  But I said I didn't know that you were asking
7  questions based on this.
8      Q. Does it make any difference; would it have
9  changed your answers?
10      A. No, never.
11      Q. Do you have any basis to dispute that Scotts'
12  suppliers use loose coir with a bulk density of 0.08
13  grams per cubic centimeter?
14      A. I don't know.
15      Q. You have never measured the bulk density of
16  the loose coir that Scotts' suppliers use?
17      A. That's true.
18      DR. STIMSON:  No further questions.
19      MR. POSTHUMUS:  No, no further questions.
20      THE VIDEOGRAPHER:  This concludes the video
21  deposition of Suseel Thomas, consisting of one tape.
22  The original tape for today's testimony will remain in

Page 39

1  the custody of Digital Evidence Group.  The time is
2  approximately 10:08 a.m.  We are going off the record.
3      (Thereupon, the taking of the
4      deposition was concluded
5      at 10:09 a.m.)
6
7              * * * * *

Page 40

1      REPORTER'S DECLARATION
   STATE OF NEVADA      )
                        )  ss:
2  COUNTY OF CLARK      )
3      I, Michelle C. Johnson, CCR 771, declare as
   follows:
4      That I reported the taking of the deposition
   of the witness, SUSEEL THOMAS, commencing on Thursday,
5  July 19, 2012 at 9:26 a.m.
       That prior to being examined, the witness was
6  by me duly sworn to testify to the truth, the whole
   truth, and nothing but the truth.
7      That I simultaneously transcribed my said
   shorthand notes into typewriting via computer-aided
8  transcription, and that the typewritten transcript of
   said deposition is a complete, true, and accurate
9  transcription of said shorthand notes taken down at
   said time.  That the witness did request transcript
10  review pursuant to FRCP 30(e).
11      I further declare that I am not a relative or
12  employee of any party involved in said action, nor a
   person financially interested in the action.
13
14      Dated at Las Vegas, Nevada this 30th day of
15  July, 2012.
16
17
18
19
20
21
22  _____
   Michelle C. Johnson, RPR-CRR, CCR No. 771

Page 41

Pages  38 to 41

a525ba80-5cdd-4f9a-9113-427d8a59de5e
EXHIBIT 1, pg. 7

# EXHIBIT 2

William C. Rooklidge (*pro hac vice*)
Michael J. Stimson (*pro hac vice*)
Michelle Stover (*pro hac vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone:   (949) 851-3939
Facsimile:   (949) 553-7539

Gregory A. Brower (State Bar No. 5232)
gbrower@swlaw.com
Chad Fears (State Bar No. 6970)
cfears@swlaw.com
SNELL & WILMER
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169-5958
Telephone:   (702) 784-5200
Facsimile:   (702) 784-5252

Attorneys for Defendant
THE SCOTTS COMPANY LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PATTI DONNER RUBIN, a Florida resident,<br><br>Plaintiff,<br><br>v.<br><br>THE SCOTTS COMPANY LLC, an Ohio limited liability company,<br><br>Defendant. | Case No. Case No. 09-CV-02419 (GMN) RJJ<br><br>**DEFENDANT THE SCOTTS COMPANY LLC'S AMENDED NOTICE OF DEPOSITION OF SUSEEL THOMAS**<br><br>Date:   July 19, 2012<br>Time:   9:30 a.m.<br>Place:   Snell & Wilmer<br>3883 Howard Hughes Pkwy<br>Suite 1100<br>Las Vegas, NV  89169 |

IRI-40882v1

AMENDED NOTICE OF DEPOSITION OF
SUSEEL THOMAS

**EXHIBIT 2, pg. 1**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2012, commencing at 9:30 a.m. at Snell &

Wilmer, 3883 Howard Hughes Parkway, Suite 1100, Las Vegas, Nevada 89169, Defendant The

Scotts Company LLC will take the deposition upon oral examination of Plaintiff's expert witness,

Suseel Thomas. The deposition will take place before an officer duly authorized by law to take

testimony and administer oaths and will continue from day to day, excluding Saturdays, Sundays,

and holidays, until completed. The testimony may be recorded by sound, visual, and

stenographic means. Defendant specifically reserves the right to use such recordings at trial.

Dated: July 16, 2012

Respectfully submitted,

By: _____

William C. Rooklidge (*pro hac vice*)
Michael J. Stimson (*pro hac vice*)
Michelle Stover (*pro hac vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
Telephone:     (949) 851-3939
Facsimile:      (949) 553-7583

Gregory A. Brower (State Bar No. 5232)
gbrower@swlaw.com
Chad Fears (State Bar No. 9183)
cfears@swlaw.com
SNELL & WILMER
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169-5958
Telephone:     (702) 784-5200
Facsimile:      (702) 784-5252

Attorneys for Defendant
THE SCOTTS COMPANY LLC

IRI-40882v1

1

AMENDED NOTICE OF DEPOSITION OF
SUSEEL THOMAS

**EXHIBIT 2, pg. 2**

1

## PROOF OF SERVICE

2
 I am a citizen of the United States and employed in Orange County, California.  I am over

3
the age of eighteen years and not a party to the above-entitled action.  My business address is

4
3161 Michelson Drive, Suite 800, Irvine, California  92612.  On July 16, 2012, I served a copy of

5
the following document(s):

6
   **AMENDED NOTICE OF DEPOSITION OF SUSEEL THOMAS**

7

8
 ☐  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California addressed as set forth below.

9

10
 ☒  by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

11
John Posthumus       Patrick J. Reilly

12
Sheridan Ross P.C.       Holland & Hart LLP
1560 Broadway, Suite 1200    9555 Hillwood, 2nd Floor

13
Denver, Colorado 80202     Las Vegas, NV 89134
Telephone: (303) 863-9700    Telephone: (702) 669-4600

14
Facsimile: (303) 863-0223     Facsimile: (702) 669-4650
Email jposthumus@sheridanross.com  Email: preilly@hollandhart.com

15
*Attorneys for Plaintiff*      *Attorneys for Plaintiff*

16

17
 I am readily familiar with the firm's practice of collection and processing correspondence

18
for mailing.  Under that practice it would be deposited with the U.S. Postal Service or UPS on

19
that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware

20
that on motion of the party served, service is presumed invalid if postal cancellation date or

postage meter date is more than one day after date of deposit for mailing an affidavit.

21
 I declare under penalty of perjury under the laws of the State of California that the above

22
is true and correct.

23

24
 Executed on July 16, 2012, at Irvine, California.

25

26
              Deborah Hayes

27

28

**EXHIBIT 2, pg. 3**

# EXHIBIT 3

1    Patrick J. Reilly, Esq.
     Nevada Bar No. 6103
2    HOLLAND & HART LLP
     9555 Hillwood Drive, 2nd Floor
3    Las Vegas, Nevada, 89134
     Telephone: (702) 669-4600
4    Facsimile: (702) 669-4650
     preilly@hollandhart.com
5

6    John R. Posthumus, Esq.
     Colorado Bar No. 20950
     SHERIDAN ROSS P.C.
7    1560 Broadway, Suite 1200
     Denver, CO  80202-5141
8    Telephone: (303) 863-9700
     Facsimile: (303) 863-0223
9    jposthumus@sheridanross.com
     (Admitted *pro hac vice*)
10

11   *Attorneys for Plaintiff*

12             **UNITED STATES DISTRICT COURT**
                 **DISTRICT OF NEVADA**

13   PATTI DONNER RUBIN, a Florida resident,   Case No. 09-CV-02419 (GMN) RJJ

14           Plaintiff,         **EXPERT REPORT OF SUSEEL**
                     **THOMAS**
15      v.

16   THE SCOTTS COMPANY LLC, an Ohio
     limited liability company,
17

18           Defendant.

19

20

21

22

23

24

25

26

27

28

EXHIBIT
2
*Thomas*
7/18/12

**EXHIBIT 3, pg. 1**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of May, 2012, the attached Expert Report of Suseel

Thomas was electronically served on the following at the e-mail addresses indicated:

Gregory A. Brower, Esq.
Chad R. Fears, Esq.
Brian R. Reeve, Esq.
cfears@swlaw.com
gbrower@swlaw.com
breeve@swlaw.com

William C. Rooklidge, Esq. (pro hac vice)
wrooklidge@jonesday.com
Michael J. Stimson, Esq. (pro hac vice)
mstimson@jonesday.com
Michelle Stover, Esq. (pro hac vice)
mstover@jonesday.com

Jeffrey J. Jones, Esq. (pro hac vice)
jjjones@jonesday.com


s/ Lynn Tumey
Lynn Tumey
Assistant to John R. Posthumus
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202
(303) 863-9700
(303) 863-0223 facsimile
ltumey@sheridanross.com;
litigation@sheridanross.com

2

**EXHIBIT 3, pg. 2**

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

PATTI DONNER RUBIN, a Florida resident,

     Plaintiff,

  v.

THE SCOTTS COMPANY LLC, an Ohio
limited liability company,

     Defendant.

Case No. 09-CV-02419 (GMN) RJJ

## EXPERT REPORT OF SUSEEL THOMAS

    1.    I, Suseel Thomas, am the Managing Partner of Madappatt Exports in India. My resume is attached as Exhibit 1. I do not have any publications that I have authored in the previous 10 years.

    2.    I have been retained by the law firm of Sheridan Ross PC, counsel for the plaintiff Patti Rubin ("Rubin") to provide information and my opinions about coir.

    3.    I have not previously testified as an expert at trial or by deposition.

    4.    I am being compensated for my time preparing this report at a rate of $50/hour. My rate for testimony at depositions, hearings and trial is $50/hour.

    5.    Madappatt Exports is in the business of manufacturing coir products for distribution throughout the world, including the United States. Madappatt manufactures coir blocks, bricks and several other sizes of compressed coir.

1

**EXHIBIT 3, pg. 3**

6.     For the past 5 years as the Managing Partner of Madappatt Exports, I personally been involved in the operation of the business, including supervising the operation of the business, sourcing the coir, running various tests on the coir, handling the logistics of the business, sales and marketing.  As result of my experience and work responsibilities related to coir, I am providing this expert report.

7.     Coir is the term used to describe the coarse fiber of the coconut husk. Coir pith, the short fibers and dust left behind after the industrially valuable long fibers of coir are extracted from the coconut husk, is widely used throughout the world as a constituent in horticultural-grade growing media for vegetables, ornamental plants, roses, cut flowers, and nursery crops.

8.     The long fibers of coir fiber are used for industrial purposes, especially for mattress manufacturing.  During the process to recover the long fibers of coir, short fibers and coir dust are also extracted.   The short fibers and coir dust are known as coir pith or coco peat or coir. The basic raw material when extracted is in loose form.

9.     The extracted coir is washed several times in fresh water to maintain the EC (electrical conductivity) to the specific standards normally below 1 or as per the request of customers. Next, the coir is naturally dried and sieved to remove long fiber, stones and weeds, before it is taken to the factory for further processing and compaction.

10.    At the factory, the moisture level of the coir is checked to confirm the EC and PH levels. PH value for coir ranges anywhere between 5.5 to 7. After testing, the coir is then sieved once again to make sure the stones and unwanted foreign materials are removed on a 6mm mesh. Then, the coir compacted into blocks, briquettes and several other sizes using compaction machinery.

2

**EXHIBIT 3, pg. 4**

11.     Specifically, the coir is compacted after removing the foreign materials by feeding in to the compaction machine. The coir block is compressed in to an approximate 5:1 ratio and the coir brick to an approximate 8:1 ratio.  The process involves continuous feeding of loose coir material into the compaction machine. The compaction machine hydraulically compresses the coir.

12.     After compaction, the coir is shipped based on the requirement of the customer. Most customers require bulk packing on pallets which is mainly used for wholesale market whereas the retail packing is by wrapping and labeling individual blocks.

13.     I take the utmost care in checking the moisture level of the washed coir when it arrives at our facility.  The moisture level should be kept below 20% at all times during the manufacturing process. This can range from 10 to 20%. Only in this moisture range, we can get the blocks in good shape and the expansion process is fast even after several months of compaction. The moisture level of the compacted coir when it leaves our facility is below 20%.

14.     In my opinion, coir is best compacted between a range of 17 to 20%.  If the moisture level is higher, for example, 22% or above, I have observed a process of lignifications which means the moisture content in the material when compacted will create an outer cover which in turn will affect the expansion of the compacted coir.  If the moisture level is lower, for example, below 10%, the coir will get compacted but during the compaction process the particle may crack and get damaged and lead to expansion problems.

15.     In my opinion a moisture level of 17 to 20% would be ideal to compact coir for best results.

3

16.    I reserve the right to supplement this report should any new information become available.

Dated this 30th day of May, 2012.



Suseel Thomas

4

Suseel Thomas

Managing Partner

Madappatt Exports

13/423,Ramapuram Bazar P.O
Kottayam Dist,Kerala,India-686576
Phone:+914822260262,263016
Mobile:+919788512000
Fax:+914259220030
E-mail:mail@madapatagencies.com
Web:www.madappattexports.com

**Profile**

International market strategy analyst with cross functional expertise in Business,
Finance, International marketing and new business development. More than 5
years experience in International Business, combining strong marketing skills with
business wisdom to positively contribute to organizations bottom line. Computer
literate with excellent inter personal and analytical skills

**Experience**

2008 to Present: Managing Partner, Madappatt Exports,India.

2006 to 2008 : Financial Analyst: Sky,United Kingdom

**Educational Qualification**

Masters in Business administration (Finance)2004 to 2006

University of Abertay Dundee, Scotland.

**EXHIBIT 1**

**EXHIBIT 3, pg. 7**

# EXHIBIT 4

6/7/12                                   Gmail - Re: Coir Block and Brick                          FAIN EXHIBIT 8



# Re: Coir Block and Brick

**MadappattExports** <mail@madapatagencies.com>                          Thu, Jun 7, 2012 at 6:16 AM
To: Michael Stimson <michael.stimson@gmail.com>

The weight of the block is 5 k.g with a tolerance of +/-5%. and the brick is 650 gms again with 5% tolerance.If you require any other size we may be able to customize this for you.

Once again I would like to have your company information

Thanks
Thomas

Sent from my iPad

On Jun 7, 2012, at 5:52 PM, Michael Stimson <michael.stimson@gmail.com> wrote:

> Thank you for this information.  Can you tell me the masses or weights also?

> On Jun 7, 2012, at 3:28 AM, mail <mail@madapatagencies.com> wrote:

>> Dear Mike

>> Our Block dimension is 28 x 28 x 13 - 14 cm. and the Brick is 20 x 10 x 5.Please let me know your company name and where did you hear about us

>> Thanks

>> Thomas
>> --
>> Madappatt Exports
>> 13/423,Ramapuram Bazar P.O
>> Kottayam Dist,Kerala,India-686576
>> Phone:+914822260242
>> Mobile:+919788512000
>> Fax:+914259220030
>> E-mail:mail@madapatagencies.com
>> Web:www.madappattexports.com



**EXHIBIT 4, pg. 1**