# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### ***

| | |
|---|---|
| THE IPATT GROUP, INC, *et al* | 2:09-cv-02419-GMN-VCF |
| Plaintiff, | **ORDER** |
| vs. | **(Motion To Disqualify Counsel for Defendant and for Sanctions #145)** |
| SCOTTS MIRACLE-GRO COMPANY, | |
| Defendant. | |

Before the court is plaintiff Patti Donner Rubin's Motion to Disqualify Counsel for Defendant and for Sanctions.  (#145).  Defendant Scotts Company, LLC, filed an Opposition (#147), and plaintiff filed a Reply (#153).

**Relevant Background**

On May 30, 2012, plaintiff served its expert Mr. Suseel Thomas' report on defendant's counsel. (#145).  On July 16, 2012, defendant's counsel noticed the deposition of Mr. Thomas for July 19, 2012, in Las Vegas, Nevada.  (#145)(Exhibit 2).  Before the deposition, defense counsel Michael Stimson sent an inquiry through Mr. Thomas' company's website.  (#145)(Exhibit 1).  Mr. Stimson identified himself as "Mike," with a contact email address of michael.stimson@gmail.com.  *Id.*  Mr. Stimson did not use his Jones Day email address and did not reveal that he represented the defendant.  *Id* (Exhibits 1 and 4).

On June 7, 2012, Mr. Thomas responded to the email inquiry and provided "Mike" with the requested information.  *Id.*  Mr. Thomas also asked how Mike had heard about his company, and Mike did not answer the question, and instead asked for more information.  *Id.*  Mr Stimson replied to the email with the requested information and stated: "Once again I would like to have your company

information." *Id.*  Mr. Stimson did not provide his company information. *Id.*  Plaintiff alleges that Mr. Thomas did not learn of Mr. Stimson's company information until Mr. Thomas' deposition on July 19, 2012. *Id* (Exhibit 1).  During the deposition, Mr. Stimson presented a document and asked the reporter to mark the document as Exhibit 3. *Id* (Exhibits 1 and 4).   Mr. Stimson described the document as an email chain between himself and Mr. Thomas and apologized for not identifying his company. *Id.*   Mr. Stimson proceeded to ask Mr. Thomas questions regarding the information provided in the emails, and Mr. Thomas "ran through prepared calculations with Mr. Thomas based on the dimensions Mr. Thomas provided in his emails." *Id.*

Plaintiff asserts that Mr. Thomas did not know that "Mike" was an attorney for the defendant in this action when they were emailing, and that he believed that "Mike" was making a business inquiry. *Id* (Exhibit 1).  Mr. Stimson stated during the deposition: "you thought that I was making a business inquiry in my email?. . .But in fact, I was seeking information for use in this case, right?," and "[b]ut if in fact you realized that I had been making inquiries relating to this case, you said you would not have answered my inquiries, is that right?" *Id.*  Mr. Thomas replied, "I didn't say that I would not have answered. But I didn't know that you were asking questions based on this." *Id.*  Plaintiff's counsel then examined Mr. Thomas about the email communication, and the deposition concluded. *Id.*

Plaintiff filed the instant motion to disqualify and for sanctions on March 29, 2013.  (#145).  Defendant filed an opposition on April 12, 2013 (#147), and plaintiff filed a reply on April 22, 2013 (#153).

## Motion To Disqualify

### A.    Plaintiff's Arguments

#### 1.    Alleged Violations

Plaintiff asserts in the motion to disqualify that Mr. Stimson's contact with plaintiff's expert Mr. Thomas violated Federal Rule of Civil Procedure 26, and that the ABA states in one of its opinions "that

an attorney who engages in *ex parte* communications with the opposing party's witness commits a "flagrant violation" of Rule 26.  (#145); ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 378 (1993) (quoting *Campbell Indus. v. MlV Gemini*, 619 F.2d 24 (9th Cir. 1980)).  Plaintiff states that "[b]ecause Stimson informally, and without authorization, contacted Plaintiffs expert witness, Suseel Thomas, after receiving Mr. Thomas' expert report but before Defendant's counsel noticed the deposition of Mr. Thomas, Stimson has blatantly ignored this Court's careful scheduling of experts' disclosures." *Id.*[1]

Plaintiff asserts that Mr. Stimson violated Nevada Rules of Professional Conduct 3.4, the duty to obey obligations of the tribunal, and Rule 8.4, the prohibition against conduct which is prejudicial to the administration of justice.  *Id.*  Plaintiff argues that Rule 26(b) provides that a lawyer's permissible contact with an opposing party's expert is limited to depositions. Fed. R. Civ. P. 26(b)(4)(A); *see also Erickson*, 87 F.3d at 301," and "[t]hus, all forms of contact other than those expressly listed in the Rules are impliedly prohibited. *Erickson*, 87 F.3d at 301 (citing Geoffrey C. Hazard & William Hodes, *The Law of Lawyering* § 3.4:402 (2d ed. Supp. 1994))." *Id.*

Plaintiff also argues that "[a]lthough there is no model rule specifically addressing *ex parte* contact with the opposing party's expert witness," "*[e]x parte* communications circumvent the discovery rules and thus violate an attorney's duty to obey the obligations of the tribunal." *Erickson,* 87 F .3d at 302 (citing ABA Comm. on Ethics & Profl Responsibility, Formal Op. 378 (1993) and Nev. R. Profl Conduct 3.4)." *Id.*  Plaintiff asserts that "Stimson's *ex parte* contact with [p]laintiff's expert witness was prejudicial to the administration of justice because he discovered information from [p]laintiff's expert and used that information in the expert's deposition ." *Id* (*citing Erickson*, 87 F.3d at 303 (holding that "[A]ttorneys must use their common sense to avoid conduct which could appear to be an improper attempt to influence a witness who is about to testify.")).

---

[1]"[T]he careful scheduling of experts' disclosures and discovery by the district court would be for naught if the parties could back door these provisions with informal contacts of an adversary's experts." *Carlson v. Monaco Coach Corp*., No. CIV-S-05-0181-LKK/GGH, 2006 U.S. Dist. 2 LEXIS 21464, at *10 (E.D. Cal. Apr. 20, 2006).

Plaintiff also asserts that Mr. Stimson's ex parte contact violated Nevada Rule of Professional Conduct 4.3, "because Stimson did not indicate that he represented Defendant," and "[p]laintiff's expert witness is not represented by an attorney. *See* Steven Lubet, *Expert Witnesses: Ethics and Professionalism*, 12 GEO. J. LEGAL ETHICS 465, 485 (1999) ("Retaining counsel is not the [expert] witness's lawyer .... Since the expert is not a party to the case, the expert is not represented by either of the attorneys.")." *Id.* Rule 4.3 states that "[i]n dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding." Nev. R. Prof'l Conduct 4.3.

Plaintiff argues that Mr. Stimson "implied that he was disinterested," by (1) requesting information using the name "Mike," (2) not using his law firm email address, (3) not providing Mr. Thomas with his companies information, and (4) not stating that he represented the defendant. (#145). Plaintiff states that it was Mr. Stimson's duty to take steps to correct a misunderstanding regarding his role in the matter, and that although he knew Mr. Thomas misunderstood his role, he deliberately mislead him and failed to correct the misunderstanding. *Id* (citing *Galliher v. Bekakos*, No. 2:09-cv-02047-RCJ-LRL, 2010 U.S. Dist. LEXIS 91469, at *6 (D. Nev. July 26, 2010)).

## 2.      Appropriate Sanction

Plaintiff asserts that "Rule 37 authorizes 'a wide range of sanctions' for a party's failure to comply with discovery rules or court orders enforcing them." *Carlson,* 2006 U.S. Dist. LEXIS 21464, at *4 (quoting *Wyle v. R.J Reynolds Indus., Inc.,* 709 F.2d 585, 589 (9th Cir. 1983))." (#145). Plaintiff states that, among others, Rule 37 "allows the preclusion sanction when a party fails to obey a court discovery order, i.e., violates Federal Rule of Civil Procedure 26 and Nevada Rule of Professional Conduct 3.4. *Gemini*, 619 F.2d at 27." *Id.* Plaintiff also states that "[b]efore a court may impose

sanctions against a lawyer or a party under its inherent power, it must find that the lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons," and that "[a]ll that is required to demonstrate "willfulness" or "bad faith" is "disobedient conduct not shown to be outside the control of the litigant." *Id; Chambers*, 501 U.S. at 45-46; *Henry v. Gill Indus., Inc*., 983 F.2d 943, 948 (9th Cir. 1993).

Plaintiff argues that disqualification under Rule 37 is warranted, because (1) "Stimson's unauthorized *ex parte* contact is disobedient conduct that is clearly within his own control," (2) "Stimson did not tell Plaintiffs expert that he represented Defendant," (3) there can be no claim of "inadvertence," as "[d]efendant's counsel knew Mr. Thomas was Plaintiffs expert because Stimson had received Mr. Thomas' expert report a week before Stimson contacted Mr. Thomas," and (4) "Stimson acted willfully and in bad faith." *Id.*

Plaintiff asserts that ""[d]isqualification motions present courts with a delicate and sometimes difficult balancing task. Close cases are resolved in favor of disqualification. Where disqualification is contemplated, any doubt is resolved in favor of disqualification." *Rebel Commc'ns. LLC v. Virgin Valley Water Dist*., No. 2:10-cv-00513-LRHGWF, 2011 U.S. Dist. LEXIS 21489, at *13-14 (D. Nev. Feb. 15, 2011)." *Id.* Plaintiff also asserts that the court should consider whether the violation could be remedied by a less drastic sanction, and argues that less drastic sanctions are not appropriate in light of the willful ethical violations Mr. Stimson committed. *Id; Hernandez v. Guglielmo*, 796 F. Supp. 2d 1285, 1290 (D. Nev. 2011).

## B.    Defendant's Opposition

Defendant asserts that Mr. Stimson "submitted a factual inquiry to the website" for the company one of the plaintiff's three experts, Suseel Thomas, manages, and that he received a response back from an individual identified as "Thomas." (#147). Defendant states that plaintiff's counsel did not object at the deposition when this information was discussed, rather he examined Mr. Thomas about his

knowledge of Mr. Stimson's identity at the time of the email. *Id.* Defendant also states that the litigation proceeded without further mention of the pre-deposition contact, and that plaintiff waited until after defendant filed two motions to exclude the other expert witnesses (#111 and #117) and the parties engaged in unsuccessful settlement negotiations (#144) to file this "strategic motion" (#145) to disqualify based on alleged "*ex parte*" contact that occurred more than eight months earlier. *Id.*

Defendant argues that the motion (#145) should be denied for two reasons: (1) "the legal and ethical rules cited in Ms. Rubin's motion do not prohibit an attorney from asking an expert about factual information the expert acquired for purposes other than litigation, particularly where the attorney is acting as an investigator," and (2) "the Nevada Supreme Court has made clear that courts must balance a variety of factors before imposing the drastic remedy of disqualification, which is the only remedy Ms. Rubin seeks." *Id.* Defendant takes the position that Mr. Stimson's communications with Mr. Thomas were "limited to a factual inquiry to the Madappatt Exports' website about the company's products, which are not involved in this lawsuit, and one follow-up email [responding] to an email he received from "Thomas," requesting additional factual information about the products." *Id.* This "informal investigation," defendant argues, did not violate any rules, create any prejudice, or constitute the type of "dealing" as a lawyer covered by the ethical rules plaintiff cites. *Id.*

Defendant also argues that plaintiff "did not object to or challenge that contact either [at the deposition] or at any time prior to the end of March 2013," and that "[d]uring this long, unexplained delay, the parties incurred substantial expenses litigating this dispute." *Id.* Defendant states that this "strategic motion" is brought in an effort to achieve a "tactical advantage and, in view of the obvious and extreme prejudice to Scotts that would occur at this late date, should be denied, especially when balanced against the complete absence of any prejudice to Ms. Rubin from Mr. Stimson's email exchange with Mr. Thomas." *Id.*

. . .

**1.      Defendant's Statement Of the Relevant Facts**

Defense counsel asserts that it has represented defendant since the action commenced in 2009, and that the underlying dispute is one for patent infringement where plaintiff accuses defendant's "Turf Builder EZ Seed product ("EZ Seed") of infringing claims of her U.S. Patent No. 7,587,856 ("the '856 patent")." (#147).  As it pertains to Mr. Thomas' expertise, the "bulking agent relevant to this litigation is coir, a coconut processing byproduct, which is used in both Ms. Rubin's expanding soil mixture and Scotts' EZ Seed product." *Id.*  Mr Thomas was designated to testify regarding "the ideal moisture level for compressed coir," as he is "the Managing Partner of Madappatt Exports, a manufacturer and seller of coir products, including coir blocks and bricks." *Id.*

Defendant asserts that Mr. Stimson emailed Madappatt Exports inquiring about the dimensions of the company's coir blocks and bricks, and that "[n]one of Mr. Stimson's questions had anything to do with Mr. Thomas's expert report, but went to collateral fact issues in the litigation." *Id.*  Defendant states that the questions related to the density of Madappatt Export's coir, "which is not at issue in this litigation and only provides circumstantial evidence corroborating the density of the coir used by Scotts." *Id.*  Defendant asserts that after Mr. Stimson introduced the email as an Exhibit to the deposition, Mr. Stimson proceeded to ask Mr. Thomas about the dimensions, weights, and moisture content of the Madappatt Export's coir blocks and bricks, his background, and the scope of his expert testimony. *Id.*  Plaintiff's counsel did not object at any time. *Id.*  Defendant asserts that this deposition was conducted eight months before plaintiff filed the instant motion to disqualify (#145), and that plaintiff's counsel never raised the issue with defendant about the pre-deposition email exchange. *Id.*

**2.      Motions to Disqualify are Strongly Disfavored**

Defendant asserts that "[m]otions to disqualify face "'particularly strict judicial scrutiny' … because there is a significant possibility of abuse for tactical advantage,"[2] and that "[d]istrict courts are

---

[2] *Kelly v. CSE Safeguard Ins. Co.*, No. 2:08-cv-00088, 2010 WL 3613872, at *1 (D. Nev. Sept. 8, 2010) (*quoting Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)); see also *Hackett*, 2010 WL 4102911, at *3 ("Tactical considerations often motivate such motions.").

required to use caution in order to prevent parties from misusing motions for disqualification as 'instruments of harassment or delay.'"[3] *Id.*   Under Nevada law[4], defendant asserts, the court must consider a variety of factors before granting a motion for disqualification, including: (1) moving party must not only "establish at least a reasonable possibility that some specifically identifiable impropriety did in fact occur," but "that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case," *Brown*, 14 P.3d at 1270 (internal citations and quotation marks omitted), (2) "the district court must balance the prejudices that will inure to the parties as a result of its decision," and (3) disqualification may "be imposed only after a careful consideration of the client's right to be represented by the counsel of her choice, and the nature and extent of the ethics violation."[5]   *Id.*

### 3.     Defense Counsel's Conduct and Applicable Principles

Defendant argues that Rule 26(b)(4), relied upon by the plaintiff, does not apply in this situation, as it "governs only discovery of information within an area of knowledge acquired by the expert for use as an expert in litigation or trial purposes," and "does not govern facts acquired by the expert for other purposes."  (#147).   The defendant also argues that even if Rule 26(b)(4) did apply, "amendments to the rule fatally undermine the earlier Ninth Circuit authorities on which Ms. Rubin relies to argue a violation of that Rule," and the "current version of Rule 26(b)(4) would not have barred Mr. Stimson's inquiries even if Mr. Stimson had been seeking expert information."  *Id.*

Defendant asserts that Mr. Stimson did not violate the Nevada Rules of Professional Conduct, as (1) the "provision of Rule 3.4 on which Ms. Rubin relies requires a knowing violation of a tribunal

---

[3] *Arteaga v. Hutchins Drywall, Inc.*, No. 2:06-CV-01177, 2011 WL 219918, at *2 (D. Nev. Jan. 21, 2011) (*quoting Brown v. Eighth Judicial Dist. Ct.*, 14 P.3d 1266, 1270 (Nev. 2000)); *see also Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 436 (1985) (expressing concern about the "'tactical use of disqualification motions' to harass opposing counsel").

[4] Courts apply state law in determining matters of disqualification. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

[5] *Palmer v. Pioneer Hotel & Casino*, 19 F. Supp. 2d 1157, 1162 (D. Nev. 1998) (citing *Faison v. Thornton*, 863 F. Supp. 1204, 1217 (D. Nev. 1993)), overruled on other grounds, 338 F.3d 981 (9th Cir. 2003); *see also Arteaga*, 2011 WL 219918, at *1 (same).

rule," and "Mr. Stimson did not disobey Rule 26 of the Federal Rules of Civil Procedure, or any other tribunal rule," (2) the "provision of Rule 8.4 identified by Ms. Rubin requires conduct prejudicial to the administration of justice," "[b]ut Ms. Rubin does not identify any prejudice arising from Mr. Stimson's obtaining the dimensions and weights of Madappatt Exports' coir products before Mr. Thomas's deposition," and (3) " Ms. Rubin cannot establish a violation of Rule 4.3 because Mr. Stimson submitted his inquiry to Madappatt Exports, and his one follow-up email to Mr. Thomas occurred in an investigative capacity, not as a lawyer "dealing" with an unrepresented person." *Id.*

### 4.    The "Extreme" Remedy of Disqualification

Defendant argues that the remedy sought is not appropriate because, not only has plaintiff not established a violation of any discovery or ethical rules, but (1) "the eight-month delay in filing this motion shows that it was brought for tactical advantage, not to remedy,"[6] (2) defendant "would be greatly prejudiced by the loss of its counsel before trial," and (3) "Ms. Rubin identifies no prejudice to herself or her trial preparation in this case." (#147).

Defendant asserts that "[i]n considering the effect of delay on a motion for disqualification, courts consider (1) the length of delay; (2) whether the moving party was represented by counsel during the delay; and (3) why the delay occurred, including whether the moving party delayed for tactical reasons. *Emp'rs Ins.*, 692 F. Supp. at 1165 (citing *Trust Corp.*, 701 F.2d at 87-88)." *Id.* Defendant states that "[n]ot once during the[] eight months [since the deposition] did Ms. Rubin[, who was represented by counsel,] object to Mr. Stimson's email exchange with Mr. Thomas," and "[i]n fact, the exchange was not even mentioned during that eight-month period." *Id.* Defendant also asserts that courts have "denied disqualification motions for delays of this length and shorter." [7] *Id.*

---

[6] A court should deny a motion for disqualification if the moving party unreasonably delayed filing the motion. *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87-88 (9th Cir. 1983) ("It is well settled that a former client who is entitled to object to an attorney representing an opposing party … but who knowingly refrains from asserting it promptly is deemed to have waived that right."); *Emp'rs Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F. Supp. 1150, 1165 (N.D. Cal. 1988).

[7] *See Openwave Sys. Inc. v. Myriad France S.A.S.*, No. C 10-02805 WHA, 2011 WL 1225978, at *6-7 (N.D. Cal. Mar. 31, 2011) (finding four-month delay in moving to disqualify justified denial of motion); *Skyy Spirits, LLC v. Rubyy, LLC*, No. C 09-00646 WHA, 2009 WL 3762418, at *4 (N.D. Cal. Nov. 9, 2009) (concluding that eight-month delay supported denial of motion); *cf. Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court*, 152 P.3d 737, 740-41 (Nev. 2007) (holding moving

Defendant states that the "sequence of this litigation reveals the tactical nature of Ms. Rubin's delay," as "[a]ll that remains of this litigation, which has been pending since 2009, is a decision on the outstanding motions, including the motion for summary judgment Scotts filed before Mr. Stimson's contact with Mr. Thomas, and, if those motions are unsuccessful, trial." *Id.*   Defendant contends that "only after the parties failed to settle did Ms. Rubin file this motion seeking the disqualification of Scotts' counsel, Jones Day," and that plaintiff's "silence and delay demonstrates that this motion was filed for tactical advantage, not to remedy an alleged violation of Rule 26 or the Nevada Rules of Professional Conduct." *Id.*

Defendant argues that "[i]n light of the absence of prejudice to Ms. Rubin and the extreme prejudice to Scotts that would result from disqualification of Jones Day, an order of disqualification would be improper." *Id.*   Defendant asserts that it would be severely prejudiced from a disqualification "by being deprived of its longtime counsel when (at most) nothing but trial remains in this litigation," and that "[d]isqualification after substantial preparation of a case for trial has taken place will only lead to further delay and should be denied in view of the substantial prejudice to Scotts." *Id.*[8] Defendant argues that, in contrast, plaintiff will suffer no prejudice and has not identified or submitted evidence of any actual prejudice to her case.[9] *Id.*

---

party's "almost immediate[]" identification of disqualifying conduct and request for opposing counsel to withdraw weighed against a finding of waiver based on a "delay alone").

[8] *See Emp'rs Ins.*, 692 F. Supp. at 1166 (denying motion to disqualify where nonmoving party's counsel had "done an extensive amount of work in this action as well [as in] the underlying third-party cases, and any new counsel would have to spend a great deal of time becoming familiar with the many claims and issues in dispute," which would "seriously delay" resolution of the case); *Skyy Spirits*, 2009 WL 3762418, at *4 (finding delay—considered along with "the prejudice to Skyy, and Rubyy's willingness to deal with Attorney Kinnear in settlement negotiations"—weighed heavily against disqualification).

[9] *See, e.g., Plasma Physics Corp. v. Sanyo Electric Co.*, 123 F.R.D. 290, 291-93 (N.D. Ill. 1988) (emphasizing moving party's failure to submit evidence of prejudice);

Defendant states that the communications at issue did not concern any confidential matters, contained information "routinely provide[d]" to customers or the public, and did not result in a "continuing effect"[10] on these proceedings.  *Id.*

### C.      Relevant Law/Discussion

#### 1.      Alleged Violations and Nature/Effect of Communications

Plaintiff alleges that defense counsel violated Rule 26 of the Federal Rules of Civil Procedure and rules 3.4 and 8.4 of the Nevada Rules of Professional Conduct.  (#145).  Rule 26 provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."  Fed. R. Civ. P. 26(b)(4)(A).  Nevada Rule of Professional Conduct 3.4(c) states that "[a] Lawyer shall not...(c) Knowingly disobey an obligation under the rules of a tribunal..."  Pursuant to Nevada Rule of Professional Conduct 8.4 titled "Misconduct," "[i]t is professional misconduct to... (d) Engage in conduct that is prejudicial to the administration of justice..."

The court recognizes that Mr. Stimson communicated with Mr. Thomas outside of the deposition setting, but finds that since the communications were not of the same nature and did not have the same negative effect as in cases cited by plaintiff.  Those cases addressed counsel's *ex parte* communications with the other party's expert, determined that the conduct violated Rule 26(b)(4)(A) and rules equivalent to the Nevada Rules of Professional Conduct 3.4 and 8.4, and disqualified counsel.   Here, disqualification is not warranted.

In *Am. Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc*., CIV-LV-82-26 HEC, 1983 WL 25286 (D. Nev. Dec. 8, 1983)(hereinafter "MGM Action"), the MGM Grand Hotel sought "an order disqualifying the law firm of Cozen, Begier and O'Connor, counsel for Insurance Company of North America (INA) and Robbins, Zelle, Larson & Kaplan, counsel for American Protection Insurance Company (AMPICO)(hereinafter collectively "Cozen") from further participation in th[e] case based on

---

[10]  *See Abubakar v. Cnty. of Solano*, No. CIV S-06-2268, 2008 WL 336727, at *6 (E.D. Cal. Feb. 4, 2008) ("Generally, disqualification for ex parte communication is only appropriate where the misconduct will be certain to have 'continuing effect' on the judicial proceedings.").

allegations of unethical contacts with and wrongful offers of large sums of money to...George L. Morris, an employee of the MGM Grand Hotel,..."  Morris, who was designated as MGM's "sole testifying trial expert under Rule 26(b)(4)(a) and its non-testifying consultant under Rule 26(b)(4)(B)," had his counsel approach Cozen stating that he could provide the services of "a person having great knowledge of the pending litigation by the INA and the MGM Grand Hotel...and [that] this person wanted to enter into a personal service contract for $1,000,000."  *Am. Prot. Ins. Co.*, 1983 WL 25286 *1.

Although Cozen did not originally know the identity of the "person having great knowledge," "the identity of Mr. Morris was learned by Cozen" and "several meetings were held between Cozen, [his counsel,] and Morris, the general nature of which was to reach an agreement for the employment of Morris by INA as a trial consultant."  *Id* at *2.  The court found that "Mr. Cozen voluntarily continued to negotiate for the services of Morris and indeed felt his services were indispensible to winning the lawsuit, particularly as to the fraud counts, despite that he well knew that Morris at that time was a valuable member of the litigation team of MGM and then and there a trusted advisor to MGM."  *Id*.

The court held that "Mr. Cozen invaded the MGM/Morris confidences and this was not only unfair but improper as well and clearly violated the concepts of Canons 4 and 9," and that "[e]ven at common law, such conduct as trying to secure information from another party's expert is prohibited."  *Id*.  The court disqualified the firm of Cozen, Begier, & O'Connor and ordered INA not to disseminate any of the information learned from Morris.  *Id* at *3.

The case before this court is distinguishable.  Here, Mr. Thomas, a managing partner in Madappatt Exports, which is in the "business of manufacturing coir products," such as "blocks, bricks, and several other sizes of compressed coir," was retained by plaintiff *after* the commencement of this action to provide information and opinions about the moisture of coir (the coarse fiber of the coconut husk).  (#145 Exhibit 3).  Mr. Thomas is one of three disclosed experts, and is a managing partner in Madappatt Export, not plaintiff's long-time employee.  (#145).  Mr Thomas' expert report indicates that

he has *not* testified as an expert at trial or by deposition either for plaintiff or for any other party. *Id* Exhibit 3. The expert in the MGM Action, however, was (1) a "paid consultant of MGM," (2) the Vice President of Construction of MGM, (3) "generally the most important and knowledgeable employee in the reconstruction of" MGM after the fire, (4) "the most trusted [and] most important and necessary employee to the MGM Hotel in that he was regularly called upon to review, evaluate and report on the general nature of the reconstruction as well as MGM's fiduciary in its dealings with the Kemper Group and its various consultants," (5) in charge of "monitor[ing] and account[ing] for the expenses of reconstruction," (6) the "sole testifying expert" for MGM, and (7) "fully privy to MGM's confidence." *Am. Prot. Ins. Co.*, 1983 WL 25286 *1.

The expert in MGM's "advice, suggestions, and counsel in the [MGM] litigation was of great importance to MGM to the extent that his services in that regard were indispensable." *Am. Prot. Ins. Co.*, 1983 WL 25286 *1. The court in the MGM Action found that Cozen "indeed felt [Morris'] services were indispensable to winning the lawsuit." *Id* at *2. Mr Thomas' expert report provides an explanation of how different parts of coir are extracted and their uses, and how the coir is eventually "compacted into blocks, briquettes and several other sizes using compaction machinery." (#145 Exhibit 3). Mr. Thomas offers the opinion that "coir is best compacted between a range of 17 to 20%," and that such a moisture level would "be ideal to compact coir for best results." *Id.* Neither party has demonstrated or argued here that Mr. Thomas' expert report, opinions, or information provided in the email communication were in any way "indispensable" the them. (#145, #147, and #153).

Mr. Stimson contacted Madappatt Exports via their website's "Contact Us" page before Mr. Thomas' deposition regarding the dimensions of the companies' coir blocks and bricks and the masses and/or weights for the coir blocks and bricks. (#145 Exhibit 4). Unlike in the MGM Action, this factual inquiry is not critical to the underlying dispute or the opinions provided by Mr. Thomas in relation to this litigation. *Id.* Mr. Thomas' company's product, which was the topic of the email, is not involved in

the dispute.  Mr. Stimson was not trying to obtain confidential information or hire Mr. Thomas as an expert for defendant, as was the case in the MGM Action.  *See* (#145 Exhibit 4).  Mr. Thomas testified that he believed the email was "a business inquiry" and that he "thought it was a business opportunity for [him]."  (#145 Exhibit 1).

Mr. Thomas also testified that his answers in the email were truthful, as he would have disclosed such information to <u>any potential customer</u>, and that he would <u>not</u> have changed his answers if he knew the party asking the questions was in fact an attorney for the defendant.  *Id.*  In contrast, the expert in the MGM Action was going to be paid to provide extremely confidential information he obtained through his unique relationship as a "trusted advisor" with the MGM.  *See generally Am. Prot. Ins. Co.*, 1983 WL 25286.  Such information was very useful to the opposing party, and could not have been obtained through another source.  *Id.*  The court in the MGM Action found that Cozen "invaded the MGM/Morris confidences," and that "such conduct as trying to secure information from another party's expert is prohibited."  *Am. Prot. Ins. Co.*, 1983 WL 25286 *2.  Mr. Thomas does not have a unique relationship with the plaintiff and did not disclose confidential information to Mr. Stimson, *nor* did Mr. Stimson ask for such information.  (#145).  No confidences between Mr. Thomas and plaintiff were invaded in any way.  *Id.*  As demonstrated above, the court finds the conduct at issue before the court to be of a very different nature than that discussed in the MGM Action.

The court also finds that the effect of the conduct at issue is very different from cases where disqualification is necessary.  In *Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996)(hereinafter "*Erickson* Action"), the purchaser of motor home brought a *pro se* action against the manufacturer of his mobile home.  The plaintiff had retained two experts: a metal expert, Dr. Steven Grimm, and a chassis expert, Gary Bennett.  *Erickson*, 87 F.3d at 300.  Before Grimm's deposition, defense counsel Combs "asked Dr. Grimm if he would evaluate a lock which was an important piece of evidence in an unrelated case that Combs was handling," and offered to compensate Grimm for his evaluation.  *Id.*

14

Plaintiff was present during the discussion, and said that "it was not up for him to decide" when asked if he had a problem with the arrangement. *Id.* After Grimm's deposition, defense counsel escorted Grimm to another room to evaluate a photo and video of the lock, and plaintiff was not present during this interaction. *Id.* Plaintiff confronted defense counsel about the situation, and, after counsel would not stipulate that he would not tamper with his next expert witness Bennett, plaintiff cancelled the deposition of Bennett. *Id.*

Plaintiff filed a motion for judgment against defendant for tampering with a material witness. *Id.* Grimm resigned from his job with defense counsel, and plaintiff fired Grimm because he did not know if he could trust him. *Id.* Plaintiff's other expert, Bennett, heard that "attorneys [were] bothering the witnesses," and refused to be an expert for plaintiff. *Id.* The court denied plaintiff's motion for judgment, and, after a trial where plaintiff did not have the benefit of expert testimony, the court entered judgment in favor of defendant. *Id.* Plaintiff appealed. *Id.* The Ninth Circuit held that the District Court improperly analyzed the case relying solely on cases that dealt with an expert "switching sides," and that the situation actually involved the expert, while still employed by plaintiff, being approached by defense counsel with an offer of employment. *Id* at 301. The court stated that it needed to determine whether "an attorney who offered a monetary inducement to an expert witness prior to the expert giving his testimony" was unethical and what sanction was appropriate. *Id.*

The court held that defense counsel violated two of the rules of professional conduct: "1) the duty to obey obligations of the tribunal, Rule 173(3); and 2) the prohibition against conduct which is prejudicial to the administration of justice, Rule 203(4). Nev.Sup.Ct.R.Prof.Conduct 173(3), 203(4) (1986)." *Id.* The court evaluated Rule 26(b)(4) as it was at the time of the alleged violation and two ethics opinions regarding *ex parte* communications. *Id* at 302. The court held that since defense counsel (1) offered to pay plaintiff's expert for testimony in another case, (2) consulted with plaintiff's

expert outside of the presence of plaintiff, and (3) "achieved unsupervised access to plaintiff's expert," he violated Nevada Rule 173(b) "by disobeying the discovery obligations of the court." *Id.*

The court further held, "**[m]ore importantly**," that defense counsel's "actions had a prejudicial effect on [plaintiff's] ability to present his case," as (1) plaintiff could no longer use his expert because he did not know what had transpired between the expert and defense counsel, (2) it had taken plaintiff months to find the expert and he could not find a replacement in time for trial, (3) there were no other metal experts proficient in fiberglass in Nevada, (4) the other expert refused to testify in a case where the "attorneys [were] bothering the witnesses," and (5) both experts were "critical to [plaintiff's] lawsuit." *Id* at 303.

The court also found defense counsel's conduct "particularly disturbing," because he took advantage of the plaintiff's status as a *pro se* litigant. *Id.* The court stated that attorneys "must use their common sense to avoid conduct which could appear to be an improper *attempt to influence* a witness who is about to testify." *Id* (emphasis added). The court held that although it does not know the motivation behind the offer of employment, "at a minimum, the offer of employment put Dr. Grimm in the position of having *divided loyalties*," and that "[q]uite simply, this court chooses to abide by the ageless wisdom that a person cannot serve two masters. *Id* (emphasis added).

The situation presently before the court is very different.  Mr. Stimson sent Mr. Thomas an email through Mr. Thomas' company's website asking a general question and received an answer that any other individual would have received had they asked the same question.  (#145 Exhibits 1 and 4).  Mr. Stimson (1) did not identify himself as opposing counsel, (2) did not offer a "monetary inducement" to Mr. Thomas as an expert in this or any other case before he testified, (3) did not put Mr. Thomas in a position of "having divided loyalties," (4) did not "attempt to influence" a witness who is about to testify, and (5) did not cause Mr. Thomas to retreat from being plaintiff's expert. *Id.*  Unlike in the *Erickson* Action, plaintiff here was not prejudiced by the communication between Mr. Stimson and Mr.

Thomas.  Plaintiff still has the ability to present expert testimony, and there is no showing that the email communication (#145 Exhibit 4) hindered plaintiff's case or caused some breakdown in the relationship between plaintiff and Mr. Thomas.  The court finds that Mr. Stimson's conduct, as opposed to the conduct in *Erickson* and *MGM,* has not had a prejudicial effect on plaintiff and has not in any way been "prejudicial to the administration of justice."

### 2.  Balancing Interests and Prejudices

The court recognizes that Mr. Stimson's contact with Mr. Thomas, plaintiff's expert, before his deposition could appear inappropriate, but finds that when weighing the prejudices and considering the plaintiff's delay in filing the motion, the severe sanction of disqualification is not warranted.  "Courts deciding attorney disqualification motions are faced with the delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice. *See Hull v. Celanese Corp.*, 513 F.2d 568, 570 (2d Cir.1975)."  *Brown v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 116 Nev. 1200, 1205, 14 P.3d 1266, 1269-70 (2000).   "While doubts should generally be resolved in favor of disqualification, *see Cronin* at 640, 781 P.2d at 1153; *Hull*, 513 F.2d at 571, parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay. *See Flo-Con Systems, Inc. v. Servsteel, Inc*., 759 F.Supp. 456, 458 (N.D. Ind.1990)."  *Id.*

"When considering whether to disqualify counsel, the district court must balance the prejudices that will inure to the parties as a result of its decision. *Cronin*, 105 Nev. at 640, 781 P.2d at 1153."  *Id.* A party seeking disqualification "must first establish 'at least a reasonable possibility that some specifically identifiable impropriety did in fact occur,' and then must also establish that 'the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's

continued participation in a particular case.' *Id.* at 641, 781 P.2d at 1153 (quoting *Shelton v. Hess*, 599 F.Supp. 905, 909 (S.D. Tex.1984))." *Id.*

Defense counsel from the law firm of Jones Day has (1) represented defendant since the defendant first appeared in this action on April 21, 2010 (#9), (2) engaged in discovery (#31) and worked with opposing counsel to extend discovery deadlines when necessary (#41, #60, #66, #71, #94), (3) stipulated with plaintiff's counsel to amend the complaint (#44), (4) prepared and filed a claim construction brief (#49), (5) engaged in mediation efforts on behalf of the defendant (#55 and #59), (6) prepared for and represented defendant during a *Markman* Hearing (#70), (7) prepared, filed, and defended a motion to compel regarding a discovery dispute (#82, #83, #93), (8) prepared, filed, and defended a motion for summary judgment (#86, #88, #89, #90, #100), which is still pending before this court, (9) worked with opposing counsel to extend dispositive deadlines (#95, #122, #123), (10) prepared, filed, and defended a motion to strike Exhibits (#102, #103, #106), (11) worked with plaintiff's counsel to resolve discovery disputes before the court (#108), (12) prepared, filed and defended motions *in limine* to exclude testimony of experts (#111, #112, #113, #114, #115, #116, #117, #118, #119, #129, #130, #131, and #132), which are still pending before the court, and (13) attended a settlement conference and engaged in settlement negotiations on defendant's behalf (#144).

As evidenced above, defense counsel has been actively engaged in this litigation for approximately three years. (#9). Fact discovery closed in this matter on February 29, 2012 (#76), expert discovery commenced on May 30, 2012, and is now closed (#104), and the Joint Pretrial Order Deadline is 30 days after the court rules on the pending motion for summary judgment (#86). If the motion for summary judgment (#86) is denied, the parties will proceed to trial. The court finds that it would be very prejudicial to disqualify defense counsel at this stage in the proceedings, and that when considering the "social interests which will be served by a lawyer's continued participation in [this] particular case," denying the motion to disqualify (#145) is warranted. *See Brown,* 116 Nev. at 1205.

The court also finds that requiring defendant to retain new counsel, provide new counsel sufficient time to familiarize themselves with the issues, law, discovery, and procedural history of the action would not only be financially burdensome on the defendant, but would unnecessarily waste time. *See* Federal Rule of Civil Procedure 1 (the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."); *See Brown,* 116 Nev. at 1206 (holding that "petitioners would be severely prejudiced by the disqualification of their counsel of choice, as it would be very difficult for new counsel to economically and timely move the case to trial.). The prejudice weighs against disqualification.

The court must balance defendant's right to the counsel of its choice and the prejudice that would result from disqualification, with plaintiff's "right to be free from the risk of even inadvertent disclosure of confidential information..." *Brown*, 116 Nev. at 1205.  As is evidenced in Section C(1) above, wherein the court discusses the nature of the communication between Mr. Thomas and Mr. Stimson, no confidential information was disclosed to Mr. Stimson. *See* (#145 Exhibit 4).  Mr. Thomas testified that he would have provided the information to *any* individual who sent the inquiry, and that his answers would not have changed had he known that "Mike" was actually defense counsel.  (#145 Exhibit 1).  Plaintiff does not argue that any confidential information was disclosed or that there is even a "risk of inadvertent disclosure" present.  (#145).  As the court is able to review the entire communication between Mr. Stimson and Mr. Thomas (#145 Exhibit 4) and finds no confidential material, there is no risk of confidential information being disclosed.   This weighs against disqualification.

The court must also consider the timing of plaintiff's motion (#145) when determining whether the motion to disqualify defense counsel was filed to gain a "tactical advantage" over defendant as the action proceeds to trial. *Kelly v. CSE Safeguard Ins. Co.*, 2:08-CV-00088-KJD-RJ, 2010 WL 3613872 (D. Nev. Sept. 8, 2010)(holding that "[p]articularly strict judicial scrutiny" should be given to a motion

to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage.")(quoting *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir.1985) (citations omitted)).  Mr. Thomas' deposition was conducted on July 19, 2012.  (#145).  Plaintiff's counsel did not object during the deposition to the email communication between Mr. Stimson and Mr. Thomas, rather counsel examined Mr. Thomas regarding the communication.  (#145 Exhibit 1).  According to defendant, plaintiff's counsel did not mention the communication again, and did not mention disqualification during any of the motion practice regarding experts filed *after* the deposition (#111, #117, #127, #128, #129, #131) or during the settlement negotiations (#144).  (#147).  It wasn't until eight months *after* Mr. Thomas' deposition (#145 Exhibit 1) and almost a month *after* the settlement negotiation efforts failed (#144) that plaintiff filed the instant motion to disqualify (#145).

The court is not determining that the plaintiff's motive behind the delay was in fact tactical in nature, rather the court finds that the timing of the motion supports the conclusion that the communication between Mr. Stimson and Mr. Thomas did not raise a serious concern to plaintiff and did not reach the level of communication that warrants disqualification.  This weighs against disqualification.  The court finds that disqualifying defense counsel is not warranted, and that, in light of the delay in filing the motion to disqualify (#145), imposing other sanctions is not warranted.

Accordingly and for good cause shown,

IT IS ORDERED that plaintiff Patti Donner Rubin's Motion to Disqualify Counsel for Defendant and for Sanctions (#145) is DENIED.

DATED this 17th day of June, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE