# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| PATTI DONNER RUBIN, a Florida resident, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>THE SCOTTS COMPANY LLC, an Ohio )<br>limited liability company, )<br>)<br>Defendant. )<br>_____ ) | Case No.: 2:09-cv-02419-GMN-VCF<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment (ECF No. 86) filed by Defendant The Scotts Company LLC ("Defendant").  Plaintiff Patti Donner Rubin ("Plaintiff") filed a Response (ECF No. 97) and Defendant filed a Reply (ECF No. 100).

## I.   BACKGROUND

Plaintiff Patti Donner Rubin ("Plaintiff") is the co-inventor and sole assignee of United States Patent No. 7,587,856 ("the '856 Patent"), entitled "Compressed Growing Medium." U.S. Patent No. 7,587,856, at [75], [73] (filed Aug. 25, 2006).  The '856 Patent is generally directed to "[a] growing medium [that] includes a bulking agent[1] compressed at a volume-to-volume ratio ranging from about 7:1 to about 10:1, being substantially free of a water-soluble binder material." *Id.* at [57].

Defendant The Scotts Company LLC ("Defendant") is an Ohio limited liability corporation that makes, sells, and distributes garden and lawn products throughout the United States. (Compl. ¶ 2.)  Plaintiff accuses Defendant of manufacturing, using, offering for sale, and selling the Scotts Turf Builder EZ Seed product ("Accused Product" or "EZ Seed") of

---

[1] The written description of the '856 Patent provides several examples of "bulking agents," including coir and peat. '856 Patent at col.2 ll.48–54.  Merriam-Webster dictionary defines "coir" as "a stiff coarse fiber from the outer husk of a coconut." *Merriam-Webster's Collegiate Dictionary* 241 (11th ed. 2004).

directly and literally infringing the '856 Patent. (Compl. ¶¶ 15–21.)  Specifically, Plaintiff asserts that Defendant's accused product infringes claims 1–3, 5, 9–10, 12, 15–20, and 22 of the '856 Patent under 35 U.S.C. § 271(a). (Stover Aff. Ex. 1, at 1:25–26, ECF No. 88-2.)

Asserted claims 1 and 15 are the two independent claims of the '856 Patent. '856 Patent col.10 ll.55–63; col.12 ll.3–9.  Claim 1 recites a growing medium as follows:

> 1. A reground growing medium, comprising:
> a bulking agent, wherein a particle size of said reground growing medium is less than 0.4 inches in mean diameter; and
> wherein said growing medium is compressed at a volume-to-volume ratio from an initial ratio of less than 3:1 to a ratio ranging from 7:1 to about 10:1 and then reground without reducing said volume to volume ratio to form an expanding soil mixture.

*Id.* at col.10 ll.55–63.  Asserted claims 2, 3, 5, 9, 10, and 12 all depend from independent claim 1. *Id.* at col.10 l.64–col.11 l.26.  In contrast, claim 15 recites a method of making a growing medium as follows:

> 15. A method of making a growing medium to form an expanding soil mixture, comprising: compressing a dehydrated growing medium at a volume-to-volume ratio from an initial ration of less than 3:1 to a ratio ranging from 7:1 to about 10:1; and regrinding said compressed growing medium to a varying particle size of less than 0.4 inches in mean diameter.

*Id.* at col.12, ll.3–9.  Asserted claims 14–20 and 22 all depend from independent claim 15.

The Court previously issued its Order construing twenty-seven claim terms. (Dec. 9, 2011 Order, ECF No. 69.)  The parties agreed on the proper constructions for twenty-one claim terms and disputed the constructions for the remaining six claim terms. (*Id.* at 5:1–6:20; 18:24–9.)  After the Court issued its Claim Construction Order, Defendant filed the instant motion seeking summary judgment of non-infringement of all asserted claims and invalidity of asserted claims 15–20 and 22. (*See* Mot. for Summ. J. 5:7–27, ECF No. 86.)

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Because a motion for summary judgment is a purely procedural question not pertaining to patent law, this Court applies the law of the regional circuit, the Ninth Circuit, when determining whether a genuine dispute exists as to any material fact. *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1230 (Fed. Cir. 2005).

Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis that depends on which party filed the motion and which party bears the burden of proof.  When the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

   If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita*, 475 U.S. at 586).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

   At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  Nevertheless, if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

1

### III.    DISCUSSION

2        In this case, Defendant, seeks summary judgment of non-infringement and invalidity of

3   the asserted claims of the '856 Patent.  Because the Court finds that summary judgment of non-

4   infringement is appropriate, the Court need not reach Defendant's invalidity arguments.  In

5   patent infringement cases, "[t]he patentee bears the burden of proving infringement by a

6   preponderance of the evidence." *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1123 (Fed.

7   Cir. 1985).  Because Plaintiff, the nonmovant, bears the burden of proof, Defendant need only

8   demonstrate that Plaintiff failed to make a showing sufficient to establish an element essential

9   to Plaintiff's claim for direct, literal patent infringement. *See Celotex Corp.*, 477 U.S. at 323–

10  24.

11       **A.    Non-infringement**

12       "To establish infringement of a patent, every limitation set forth in a claim must be

13  found in an accused product or process exactly or by a substantial equivalent." *Becton*

14  *Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990) (citing *Corning Glass*

15  *Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989)).  Therefore,

16  Defendant can carry its initial burden "by pointing out that the patentee failed to put forth

17  evidence to support a finding that a limitation of the asserted claim was met by the structure in

18  the accused devices." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed. Cir. 1989).  If

19  Defendant satisfies this burden, the burden shifts to Plaintiff, the nonmovant, to establish the

20  existence of a genuine issue of material fact by "produc[ing] specific evidence . . . to show that

21  the dispute exists." *See Bhan*, 929 F.2d at 1409.

22       In its Motion, Defendant asserts that two primary limitations are absent from the accused

23  EZ Seed product.  Defendant first argues that its EZ Seed is not "compressed at a volume-to-

24  volume ratio from an initial ratio of less than 3:1 *to a ratio ranging from 7:1 to about 10:1*," as

25

required by Independent Claim 1, Independent Claim 15[2], and the claims that depend therefrom.  Thus, Defendant argues that, because this limitation is recited in all asserted claims, the absence of this limitation precludes a finding of infringement.

Defendant also asserts that its EZ Seed product is, at no time, "reground *without reducing said volume to volume ratio*," as required by Independent Claim 1 and the claims that depend therefrom.  However, because the Court finds that Plaintiff has failed to meet her burden of establishing a genuine issue of material fact as to Defendant's first asserted basis for non-infringement, the Court need not reach Defendant's alternative basis for non-infringement of asserted claims 1–3, 5, 9, 10, and 12.

### 1.   "compressed . . . to a ratio ranging from 7:1 to about 10:1"

Defendant states that the compression step of its process results in a final ratio of "at least 13.5:1 compared to precompressed (loose) coir." (Mot. for Summ. J. 3:5–6, ECF No. 87; Bertin Aff. ¶¶ 14–22, ECF No. 90-3.)  In contrast, claims 1 and 15 in Plaintiff's '856 Patent recite a final compression volume-to-volume ratio in the range of "7:1 to about 10:1." '856 Patent col.10, l.61, col.12, ll.6–7.  Because the final volume-to-volume compression ratio of Defendant's EZ Seed product is outside of the claimed range, Defendant asserts that Plaintiff has failed to establish that every limitation in the asserted claims is present in the Accused Product.

Defendant calculates its compression ratio of 13.5:1 by comparing the density of the precompressed coir, 0.08 g/cm$^3$, with the average density of its compacted continuous coir

---

[2] Although the language of Claim 15 is not identical to Claim 1, Independent Claim 15 does recite a similar limitation. *Compare* '856 Patent, col.10, l.59–61 ("wherein said growing medium is compressed at a volume-to-volume ratio from an initial ratio of less than 3:1 to a ratio ranging from 7:1 to about 10:1") *with* '856 Patent, col.12, l.3–7 (reciting a "method of making a growing medium" which includes the step of "compressing a dehydrated growing medium at a volume-to-volume ratio from an initial ration [sic] of less than 3:1 to a ratio ranging from 7:1 to about 10:1").  Regardless of the exact wording, both claims require a compression step where the final volume-to-volume ratio is within the range of 7:1 to about 10:1.

sheet, 1.08 g/cm$^3$.$^3$ (Bertin Aff. ¶ 19.)  Defendant explains that the initial density value used in these calculations is consistent with both the public literature on the subject and with Defendant's measurements of the starting coir received from its suppliers. (*Id.* ¶¶ 20-21 ("The value [] used in [the] calculations for the density of precompressed (loose) coir is consistent with the values [Defendant] measured at the third party coir suppliers.").)

Accordingly, Defendant has successfully carried its initial burden.  Defendant has demonstrated that Plaintiff has failed to show that the Accused Product is "compressed at a volume-to-volume ratio from an initial ratio of less than 3:1 to a ratio ranging from 7:1 to about 10:1" as required by Claim 1 of the '856 Patent and the claims that depend therefrom.  Similarly, Defendant successfully demonstrates that Plaintiff has failed to show that Defendant's process of producing its EZ Seed product includes a step of "compressing a dehydrated growing medium at a volume-to-volume ratio from an initial ration [sic] of less than 3:1 to a ratio ranging from 7:1 to about 10:1" as required by Claim 15 of the '856 Patent and the claims that depend therefrom.

Thus, the burden now shifts to Plaintiff to establish that a genuine issue of material fact exists as to whether this claim limitation is present in the Accused Product.  Plaintiff attempts to carry its burden by asserting that Defendant "processes the coir it receives from its suppliers to remove contaminates such as sand, rocks, and metal, to produce a cleaned coir" and that this processing "will yield a higher bulk density" than Defendant states in its motion. (Resp. 6:7–10, ECF No. 97 (internal quotation marks omitted).)  However, Plaintiff's motion lacks any reference to specific evidence in the form of measurements from the production of Defendant's EZ Seed product.  Similarly, Plaintiff argues that "the bulk density of uncompressed coir will vary greatly on the make-up of the coir and the degree of settling of the coir." (*Id.* 6:18–19.)

---

$^3$ Defendant further notes that the observed density for the compacted sheet of coir ranged from 1.03 g/cm$^3$ to 1.15 g/cm$^3$.  Thus, based on a precompressed density of 0.08 g/cm$^3$, the resulting compression ratio of Defendant's product is outside the claimed range at all of the measured final density values.

Yet, once again, absent from Plaintiff's Response, and the exhibits attached thereto, is any *evidence* indicating that any such settling of uncompressed coir actually occurs in Defendant's process and, as a result, alters the compression ratio of *Defendant's process* such that the compression ratio falls within the claimed range. Plaintiff endeavors to overcome this deficiency by relying on an article entitled "*Physical Characteristics of Coir Pith as a Function of its Particle Size to be Used as Soilless Medium,*" which acknowledges the existence of coir with the "rather high" bulk density of 0.15g/cm.[4] However, merely acknowledging the existence of bulk coir with densities sufficiently high to result in a final compression ratio within the claimed range, without tying this allegation to Defendant's product and process, is inadequate.

At bottom, Plaintiff's mere assertions are insufficient. Plaintiff's Response, Affidavits, and Exhibits lack any evidence of calculations based on measurements taken from the Accused Product or process that establishes a genuine issue as to whether Defendant's EZ Seed product is "compressed at a volume-to-volume ratio from an initial ratio of less than 3:1 to a ratio ranging from 7:1 to about 10:1 . . .." '856 Patent col.10, ll.59–61; *see also* '856 Patent col.12, ll.4–7. Rather, as Defendant aptly noted, Plaintiff's arguments "falsely presume[] that 'the bulk density of uncompressed coir' is a material issue of fact." (Reply 4:20–21, ECF No. 100.) In reality, the only bulk density that is material to this case is the bulk density of the uncompressed coir that Defendant uses in the production of the Accused Product.

Accordingly, Plaintiff has failed to carry her burden of producing specific evidence that demonstrates the existence of a genuine dispute as to the compression ratio that results from the compression of the bulk coir that *Defendant uses* when producing the accused EZ Seed product.

---

[4] Defendant has also filed a Motion to Strike this article because it "is not probative evidence that can give rise to a genuine issue of material fact" and based on Plaintiff's failure to produce the article during fact discovery. (Mot. to Strike 1:10–14, ECF No. 102.) Even considering this article, Plaintiff has still failed to establish a genuine issue of material fact. Because the Court finds that summary judgment should be granted in Defendant's favor, the Court **DENIES** Defendant's Motion to Strike (ECF No. 102) as **MOOT**.

1  (*See id.* at 4:21–23.)  For these reasons, the Court concludes that Plaintiff has not shown that

2  there is more than "some metaphysical doubt as to the material facts." *See Matsushita*, 475 U.S.

3  at 586.

4        Finally, Plaintiff asserts that, even to the extent the compression ratio for Defendant's

5  product is 13.5:1, a question of fact remains as to whether this ratio falls within the range of

6  "7:1 to *about* 10:1."  However, construing the meaning of the term "about" in the context of the

7  '856 Patent is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S.

8  370, 372 (1996).

9        "The word 'about' does not have a universal meaning in patent claims, and its meaning

10  depends on the technological facts of the particular case." *Cohesive Techs., Inc. v. Waters*

11  *Corp.*, 543 F.3d 1351, 1368 (Fed. Cir. 2008).  Plaintiff's sole support for this proposed

12  expansion of "about" 10:1 consists of the inventor's post-hoc, self-serving statements. (Resp.

13  8:28–9:6, ECF No. 97.)  Only now does Plaintiff assert that she intended the '856 Patent to

14  cover any compression ratio where "burnishment" did not occur.[5] (*Id.*)  However, *Cohesive*

15  *Technologies* advises that courts must look to the purpose of the range when giving meaning to

16  the term "about." 543 F.3d at 1368.  The '856 Patent lacks any reference to any compression

17  ratio that exceeds 10:1.  Plaintiff's own testimony further confirms that she limited her claims

18  to about 10:1 because wafers that had been compressed beyond 10:1 failed to expand

19  adequately when exposed to water. (*See* Rubin Dep. 280:6–281:7, ECF No. 90-1.)  Specifically,

20  Plaintiff stated that "[w]e never saw it outside that limit to work as well." (*Id.* at 282:2–6.)

21  Thus, it cannot be said that Plaintiff intended her patent claims to cover compression ratios that

22  she had previously determined would not result in a functional product.  Finally, the Court

23  notes that Defendant's compression ratio, 13.5:1, exceeds the top end of the claimed range by

24

25

---

[5] Plaintiff notes that when the coir was compressed too much it became burnished and, when the coir was burnished, the coir would not expand effectively when exposed to water. (Resp. 8:28–9:2, ECF No. 97.)

more than the entire range itself.  The Court concludes that such a drastic expansion of the term "about" 10:1 would be improper.

For these reasons, the Court rejects Plaintiff's assertion that she should survive Defendant's Motion for Summary Judgment because 13.5:1 falls within the range of "7:1 to about 10:1."

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 86) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (ECF No. 102), Defendant's Motion in Limine to Exclude Testimony of Plaintiff's Damages Expert (ECF No. 111) and Defendant's Motion in Limine to Exclude Testimony of Plaintiff's Infringement Expert (ECF No. 117) are all **DENIED as MOOT.**

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 24th   day of January, 2014.


_____
Gloria M. Navarro, Chief Judge
United States District Judge